The defendants demurred generally, and on the Spring Circuit of 1831, NORWOOD, J., at the request of the counsel on both sides, gave judgment proforma sustaining the demurrer and dismissing the bill, from which the plaintiffs appealed.
By this will the land is limited over, upon the death of the first takers without leaving issue. The clause giving the negroes and the residue of his estate, and upon which this controversy arises, has not those words. The bequest is to the testator's wife and four of his children (of which one was then unborn), to be equally divided between them; and then come the words, "and in the case of the death of either, that their share be equally divided among the survivors." The bill states that the child of which the wife was then pregnant was born, and died without issue, in the testator's lifetime. It may be here remarked that this is the case which falls within the words of the will, which only provides for the death of one of the legatees, in which case the share is to go to the survivors, and not for a case where the survivors or survivor is to have all. "If either die, the share to go to the survivors." But I do not suppose this restricted construction is allowable in the case before us, because it would not give room for the exclusion of Lucy Drew upon the death of a second. *Page 106 
The bill further charges that Louisa married David Clark and is dead, as is also her husband, and that the negroes and other estate have come to the hands of his executors. It is not stated whether Mrs. (125) Clark left issue or not. The plaintiffs are the surviving sisters, and the bill claims all the share allotted to Mrs. Clark, as belonging to the plaintiffs and the widow as survivors.
If I were obliged to take it that Mrs. Clark, in fact, left no children, yet I am at liberty to consider that the possibility and probability of her leaving issue were within the testator's contemplation, if it be necessary to aid in the construction of the will. If the construction of this clause depended upon its own terms alone, that might aid in collecting the true one; for a father must be presumed to mean such a provision, consistent with the words, for his children as will best advance them. Their settlement in life and a provision for their children must be taken to enter into the testator's mind, and will be so understood, if the words do not forbid. In this case that conclusion is strongly fortified by the fact that the other parts of the will show that he actually had that in view. He gives the land over, upon death without leaving issue. It is true, these words are omitted in the residuary clause. But that does not prove that the testator meant to leave the families of all his children in poverty, to make an immense fortune accumulate for the benefit of the last survivor. It only shows that the personalty was not limited over upon a death, without leaving issue, though the death happened after the testator's own death; as is the case with respect to the land. Considering, then, that this is the will of a father, who is presumed to intend a benefit to the families of his children, and who says in other parts of his will that he does so intend, such a meaning is to be put on it, consistent with the testator's words and the rules of law, as will best effectuate that end: which is by considering the bequest an absolute one to such of the children as should outlive the testator, and once take.
The authorities are in support of this construction. Wherever there is a tenancy in common, words of survivorship shall not defeat the effect of the other words creating the tenancy in common; because that would be to strike out altogether the words of partition; which (126) cannot be done. Whereas "survivor" may have some meaning in every case, by referring it to some particular period other than a survivorship at an indefinite period, which would constitute a joint tenancy and so contradict the provision for shares. Almost every case cited, from Bindon v. Suffolk, 1 P. Wms., 96, down, thus states it. There is, indeed, in several of the cases a dispute which is the true period of survivorship referred to, short of an indefinite period. And small *Page 107 
circumstances have been laid hold of to carry it forward from the death of the testator to that of the death of a tenant for life, or other period of vesting it in possession. Thus, Bindon v. Suffolk was reversed in the House of Lords because the fund was a contingent one, to fall in infuturo, and that constituted an era to which the survivorship referred. But the principle ruled by Lord Cowper was not impugned, namely, that the death of the testator is the era, if no other can be designated upon the will, or from the condition of the estate, short of a general survivorship. And that principle has been considered as decisive ever since. Lord Hardwicke felt bound by it; and in Haws v. Haws (3 Atk., 523. 1 Ves., 13 and 1 Wils., 165) ruled according to it, although there the expression was, "with benefit of survivorship." He says Lord Cowper's
reasoning was very right; that the surviving "must be applied to some particular time, and not to a dying indefinitely." He says the House of Lords thought so, too, in Bindon v. Suffolk, but in that case fixed the time of payment as determining the survivorship, instead of the death of the testator, which last he calls an unnatural construction, as Lord Thurlow, in Roebuck v. Dean, 2 Ves., Jr., 265, has done after him. But what does he mean by unnatural construction here? Plainly, he is speaking in reference to a survivorship at some period short of an indefinite one. He says it is unnatural to tie it up to the testator's death, because one seldom provides by will for what is to happen in his lifetime. I am not sure that it is not very natural, under the idea that the testator may not come to the knowledge of the fact, though it should happen in his lifetime; or that he may provide at once for all, because he (127) may not conveniently do it when it does happen. But I will not set up my judgment against such names. Upon their authority I conclude, however unnatural that construction may be, when another period may be collected, not destructive of the tenancy in common, yet that it is to be taken as natural and reasonable, and intended, when opposed to the still more unnatural one of a survivorship indefinitely, whereby the whole estate accumulates for one.
This is the sum of what is said by those eminent judges. And with them accord others, no less able, both in chancery and courts of law. LordAlvanley, in Russell v. Long, 4 Ves., 551 so says, in conformity toStringer v. Phillips, 1 Eq. Ca., Ab., 292 and Bindon v. Suffolk; and in that respect agrees with the previous cases of Roebuck v. Dean, 4 Bro. C. C., 403, Perry v. Woods, 3 Ves., Jr., 204; Bragrave v. Winder, 2 id., 634 and Maberly v. Strode, 3 Ves., 450. And Lord Mansfield, in Rose v. Hill, 3 Burr., 1881, held the same upon a devise of land, at law, upon the ground of a tenancy in common, created by the words "to be divided" — saying it was a provision by the testator for such of his children as *Page 108 
should survive him and be in existence at the time when the interest was to vest. The same doctrine is held in the later cases of King v. Taylor, 5 Ves., 806, and Newton v. Ayscough, 19 Ves., 534, besides others.
Another class of cases has been cited in which there is a bequest to one, "and in case of his death," or "if he shall happen to die," then over; in which, according to the circumstances, the first has been held to take a life estate, and the will to be read as if it was "upon his death"; or that the first is an absolute gift, if it take effect at all, and the meaning to be to substitute one legatee for the other, if the first, by dying before the testator, never takes. Of this description are the cases ofCambridge v. Rous, 8 Ves., 12; Webster v. Hale, id., 410; Ommaneyv. Bevan, 18 Ves., 290; and Douglas v. Chalmer, 2 Ves., Jr., 501. These slight circumstances show that the gifts are successive or (128) alternative, notwithstanding the words of contingency applied to an event which is certain, but is uncertain as to the period of its happening. And the distinction contended for by the defendant's counsel, that the first taker in such cases, even if he survive the testator, must be held to take but a life estate, unless some expression in the will denote benefit to the issue or family, is material. Because the question is, What benefit was meant for each legatee? And even in those cases, if the will shows that if the first take at all, he is not to have the mere profits, but to receive the principal itself, then an absolute property is held to be given, although those who were to take in the alternative be the children of the first taker. Webster v. Hale, Much more is this so held when those who are to take on the contingency are strangers; as is the case in the other cases cited. In Cambridge v. Rous, Ommaney v. Bevan, andHinckley v. Simmons, 4 Ves., 160, there were no words of limitation, as executors, or heirs, or issue, annexed to the gift to the first taker; and yet in each it was held absolute. And here, clearly, the share of each was to be determined at the death of the testator; the estate to be divided, and then received specifically by the wife and each child. There was no trust and direction to pay over the profits, though the legacy is of a residue, including money and perishable chattels. These are circumstances which cannot but point to the contingency contemplated by the testator as that which would be determined at his death.
But if this were not so upon this last class of cases, the decision would be controlled by the former, which relate to a different subject, namely, the effect of survivorship and the application of words of joint tenancy, up to a certain period, to an express general tenancy in common to two or more in the first instance. Lord Douglas v. Chalmer, 2 Ves., Jr., 506. If the estate be a tenancy in common in creation, then the survivorship must be confined to the vesting of the estate or some anterior period; else the estate expressly created cannot exist, or, rather, would be turned *Page 109 
absolutely into a joint tenancy. In the one set of cases the (129) extent of interest is to be collected by circumstances controlling the words of contingency. In the other, the extent of interest is the result of the estate expressly given, to wit, in common, which shall not be cut down, after vesting, to a joint tenancy. In other words, the words of survivorship are introduced solely to prevent a lapse. And this is the stronger here, because it is a residuary clause, in which words of survivorship would have been unnecessary even to prevent a lapse, if a tenancy in common had not been intended and first created.
Thus I think the law stands upon the authorities, if this clause is to be construed by itself. The survivorship naturally refers itself to the period of the vesting of the estate. It may be extended, upon the intention, to the division of vesting in possession; or it may, in like manner, be restrained to the death of the testator. But every and any construction is admissible rather than an indefinite dying.
But it is said that here the anxious exclusion of Lucy Drew is predominant with the testator, and that the will must be so construed as to effect that at all events, which can only be by successive survivorships, unless we introduce "issue" into this clause, and a limitation to the issue.
There is no need of a limitation to the issue; for there is none annexed to the devise of the land, from which Lucy Drew is as strongly excluded as from the residue.
If necessary, the Court might, indeed, look to the first part of the will to show what sort of survivorship this general one in the residuary clause meant, and hold it to be after the death of one without leaving issue. Upon that construction, the plaintiffs would not be entitled, because the bill does not state that Mrs. Clark died without issue, and therefore does not make out a title in the plaintiffs. And this is a construction justified by the example of Lord Hardwicke in Haws v. Haws. There the testator gave his personal estate to his four younger children, and added "If any of them should die under age, and unmarried, I direct the share of him so dying shall go to the survivors." In another clause he gave his estate in D. to the same four children, and their heirs, "equally to be divided between them as tenants in common, with benefit of (130) survivorship." The question was, What survivorship? At the death of the testator? or indefinitely? or upon the death of one of the children under 21, and unmarried? Certainly, not indefinitely, for the reasons before given. The will did not say, like survivorship; yet it was so held, because the bequest of the personalty showed that a survivorship of some sort between the children themselves, after his death, was meant; and none other could be meant, unless it was an indefinite one, *Page 110 
which is not admissible under any circumstances, where a tenancy in common is created. This will, therefore, might well be construed with reference to a death without issue; for that would effectually exclude Lucy Drew until the death of the last child without issue; and she could be excluded no longer without an ulterior limitation, in that event, to a stranger, which has not been inserted.
But without that stretch, the disposition to the children is absolute, notwithstanding the clause of disherison. The two provisions must have a meaning put on them, and must also have a consistent meaning. The exclusion of Lucy is not to defeat the others also absolutely, although she may derive an advantage by their taking. As suppose, upon the construction contended for by the plaintiffs, the whole estate to come to one child, the last survivor, and that to die without issue and intestate, Lucy Drew would then take by force of the law, for the want of another. Shall the possibility of that prevent the last survivor from taking? Certainly not. The truth is, the testator did not know how to effect his angry purpose, and has failed to effect it in the view we are now taking, by omitting an ulterior limitation to a stranger to Lucy Drew. So he has also failed to affect her succession to one of her sisters first dying, by giving to them in the first instance a vested several interest in his estate upon his death. For the very chain of reasoning which prevents words of joint tenancy, annexed to a tenancy in common, carrying out the survivorship to an indefinite period, equally opposes giving that effect to the clause under consideration. For if, to (131) exclude her, the estate must successively survive, then the tenancy in common, expressly created, must cease, or rather never existed, although it be clear that while the estate is enjoyed, each enjoys in severalty. The two objects, carried out fully, are inconsistent with each other. Then they must be made to stand together, as far as they can; and it must be supposed nothing inconsistent was meant; and, therefore, that each was intended only so far as it was consistent with the other. The exclusion of Lucy Drew is consistent with the idea of a lapse; but not with a tenancy in common in possession after the death of the testator. It must, therefore, be restrained to the former case. But if this were not so, the general intent must prevail over a particular one. Here that is to provide for all his children, except Lucy, and to enable them to advance their families; and this the testator has done in a mode by which, in a possible event, Lucy Drew may succeed to some of the children before the death of all of them. This possibility is not to defeat altogether the legacies to the primary objects of the testator's affections and bounty. *Page 111 
I am of opinion, therefore, that upon the death of the testator, which was in this case the period for the vesting and division, the legacies became absolute to his wife and such of his children as were then living.