Daniel, J.
 

 This an action of trover for the conversion of three slaves. Pleas, The
 
 general issue
 
 and
 
 release.
 
 Willi-Satterthwaite in the year 1813 bequeathed legacies to each of his three children, James, Nancy, and Sally. The testator, after making several other devises and bequests in his will, then proceeds and says, “In case either of my said children should die without heir lawfully begotten, it is my wish that-the property should be equally divided between the children
 
 then
 
 living, whether James, Nancy or Sally.” The said three children were alive at the death of their father. Afterwards James first died; Nancy then died without issue (in July, 1836,) leaving Sally the only survivor. The slaves in controvercy were a part of those bequeathed to Nancy as aforesaid. Sally had married the plaintiff Fortescue; and she and her husband on the 27th January, 1834, executed to the defendant, then in possession, the deed for the said slaves, marked in this case with the letter (D.) Sally, the plaintiff’s wife, died, and he, as her administrator, has brought this action. The Judge was of opinion, that the contingent interest or executory devise, which each one of these children had in the legacies to the other children, was not too remote; but that the words
 
 “then
 
 living,
 
 whether
 
 James,
 
 Nancy or
 
 Sally” tied up the contingency to the death of the first taker without issue. But the Judge refused to permit the aforementioned deed from the plaintiff to the defendant to be received in evidence. The plaintiff had a verdict and judgment, and the defendant appealed.
 

 We agree with the Judge that, in this case, the limitation over to Sally, the survivor, of the legacy given to Nancy, on her dying without issue, was not too remote; but-that it was
 
 *570
 
 a good executory devise. The meaning of the testator is plain, that on any one or two of the children dying without f ’ , J . , ,. . , , T issue, the survivor or survivors,
 
 then living,
 
 whether James, Nanc7 01 should have the legacy, which had been before given to the one so dying. The contingent interest, if it ever could vest, must necessarily vest during the period of a life or lives, that were in being at the death of the testator. The words
 
 “then
 
 living” tie up the limitation during the lives of the three children.
 

 We do not agree with the Judge in the rejection, as evidence, of the deed, which Fortescue and wife executed to the defendant in 1834, and during the life of Nancy. It is true, as stated in the
 
 argument, that a possibility cannot be
 
 transferred at law. But by a
 
 possibility
 
 we mean such an interest, or the chance of succession, which an heir apparent has in his ancestor’s estate; which a next of kin has of coming in for a part of his kinsman’s estate; which a relation has of having a legacy left him, &c.: Such interests as these, we conceive, are the true technical
 
 possibilities
 
 of the common law. 2 P. Wil. 181;
 
 Whitfield v. Faucet,
 
 1 Ves. 381; Atherley on Mar. Sett. 57. But executory devises are not considered as mere
 
 possibilities,
 
 but as
 
 certain interests
 
 and
 
 estates. Gurnel
 
 v.
 
 Wood,
 
 Willes 211;
 
 Jones
 
 v.
 
 Roe,
 
 3 T. R. 93. In the last case the Judges seem to have considered it as settled, that contingent interests, such as executory devises to persons who were certain, were assignable. They may be assigned (says Atherley p. 55) both in real and personal estate, and by any mode of conveyance, by which they might be transferred, had they been vested remainders. In the present case, however, it is unnecessary to discuss the question how far the deed would have bound the wife, in case the husband had died before the contingency happened, and left her surviving. The deed, as to the husband, is an estoppel, and when his wife acquired a vested interest, to wit, in 1836, on the death of Nancy, the said interest passed to the defendant by force of the said deed, either upon the principle that the interest, when it accrued, fed the estoppel
 
 (Doe ex Dem. Christmass
 
 v.
 
 Oliver,
 
 2 Smith’s Select Cas. 417,) or the deed operated as a release of his
 
 *571
 
 wife’s
 
 choses in action.
 
 If the deed be considered as a release, the interest of the wife, as well as that of the husband, was by it extinguished, <fc there was nothing left to survive to her administrator.
 
 Burnett
 
 v.
 
 Roberts,
 
 4 Dev. 83; 1 Shep. Touch 333;
 
 2
 
 Do. 161, Preston’s Ed.; 1 Roper on Hus. & Wife 232. It is contended for the plaintiff that the deed has no conveying words in it; that it is but an agreement or covenant under seal, and therefore that it cannot operate as an assignment. The answer is, that a deed of sale of goods and chattels may be made, without any words of bargain and sale, as well as by those words. 1 Shep. Touch. 388, ('Preston’s Ed.) If the words in the deed plainly evidence a sale, it is sufficient without technical words: we think that is the case in this deed. If the deed be considered as a release, the words, we think, are sufficient to operate as such. If one do acknowledge himself under seal to be satisfied and discharged a debt, this is a good release of the debt. 2 Shep. Touch. 160, Prest. Ed. In this deed the plaintiff acknowledged himself satisfied for his right and title, which he then had or might thereafter have in the said slaves. On the death of Nancy, the plaintiff’s wife had a vested estate. The release of the husband to the defendant in possession must therefore have the effect of destroying that title in and to the slaves, which, without the release, the husband had, at that instant of time, a right to receive from the defendant and reduce into his own possession. We think there must be a new trial.
 

 Per. Curiam, Judgment reversed and a new trial awarded.