Gaston, J.
 

 The bill was filed by Amos Jacobs, the plaintiff, against John Madison, of the State of Kentucky, and George W. Locke and several others, some of whom are infants and defend by their guardian, the heirs at law of Francis Locke, deceased, defendants ; and it sets forth that in the year 1818 or 1819, before the passing of the statute, entitled “ an act to make void parol contracts for the sale of land and slaves,” the defendant Madison purchased from the late Francis Locke a certain tract of land, in the said bill particularly described, containing 46? acres, at the1 price of two dollars per acre, and in pursuance of such purchase, with the consent of the said Francis, entered into the possession of the said land, built thereon a house and cleared a part of the land for the purpose ol cultivation; that the
 
 *287
 
 said Madison paid at the time of purchase twenty-four or twenty-five dollars, part of the price; that in August 1820 the said Francis died, intestate, without having made a conveyance of the land; that the said Madison sold the said land to the plaintiff at the price of three dollars per acre,, and he entered upon the land and further inrproved the same; that at the November Term, 1820, of Iredell County Court, Ross McLelland and Robert Simonton administered on the estate of Francis Locke; that the plaintiff paid to the said administrators the residue of the purchase money due from Madison, and the money so paid was by the said administrators applied to the satisfaction of debts due from their intestate ; that, in consequence thereof, the said administrators, believing that they had power so to do, by deed bearing, date the 15th of June, 1823, conveyed the said land to the plaintiff, who was permitted to enjoy the same unmolested until long afterwards, when the defendants, the heirs at law of Francis Locke, instituted an action of ejectment against him, and, having obtained a judgment therein, turned him out of possession and then brought an action for the mesne profits. And the prayer of the bill is for an injunction to restrain the prosecution of the said action, and for a convey-anee from the defendants, the heirs at law of Francis Locke, of their legal title to the land, and for general relief. Pub'i-cation has been made as to the defendant.Madison and the bill taken
 
 pro confesso
 
 against him. The other defendants put in their answers, and thereby, after admitting that they are the heirs at law of Francis Locke, and- as such have evicted the plaintiff from the possession of the land described .in the bill a'nd instituted their action for the mesne profits, they stated that the said Francis did, at the time stated in the bill, contract with the defendant Madison to sell to him, at the price of two dollars per acre, not the tract of land described in the bill, but a piece containing seventy acres, being part of a tract containing ninety acres, adjoining his home place, retaining twenty acres of the -said tract next to the home place, being valuable bottom land on the river, and that the defendant Madison paid him in part therefor a beef, valued at $12, and no more ; that Madison entered into
 
 *288
 
 possession under his purchase, and so continued, until he was compelled to leave the State because of a criminal charge against him ; that after the said Madison went off, plaintiff undertook to bug from the administrators of the said Francis, and took a conveyance' for the tract of 46| acres described in the bill, which covers the twenty acres reserved by the said Francis, when he contracted to sell to Madison, and 26| acres of the 70 acres so contracted to be sold; that this purchase was made from the administrators, as an original purchase, and not as being in execution of the contract made by the intestate with the said Madison ; that upon this contract the plaintiff gave his note for $138, the consideration of the purchase to the administrators, and one of them, Robert Sirnonton, passed the same off to one Francis Yotmg, in payment of the said Robert’s individual debt, and that they were ignorant whether the administrators ever accounted with the estate of their intestate for the said note or the money thereby secured ; and they averred that they never heard that the plaintiff pretended to set up a claim to the land in dispute through Madison, until after the trial of the action of ejectment, and that the transaction between the plaintiff and the administrators of their ancestor took place without the assent of the defendants. Upon this answer, the injunction, which had been awarded upon the filing of the bill, was dissolved, and the plaintiff praying leave to continue his bill over as an original, entered a general replication to the answer.
 

 Upon the proofs there is no contrariety of testimony. It is established by many witnesses that in the year 1818 or 1819, the late Francis Locke sold to the defendant Madison a tract of land, called “ the Stewart place,” and supposed to contain seventy acres, at the price of two dollars per acre ; that Madison paid twenty-four or t'wenty-five dollars, and was to pay the residue of the price in his labor as a shoemaker, in making boots and shoes out of leather to be furnished by Locke ; that the leather was not furnished nor the labor done in Locke’s lifetime, but Madison removed up and remained on the land until after Locke’s death. It appears further that Locke died much indebted, and that after his
 
 *289
 
 death, sometime at or before the month of June, 1823, many of the creditors had a meeting with his administrators, the purpose of a settlement, when it became a matter of con-sulfation what was proper to be done in relation to the contract of sale with Madison respecting the said land. One of the administrators, McLelland, knew of the contract and of the payments made thereon, and all this was also known to and declared by George W. Locke, one of the defendants in this suit, and who was present at the said conference. Madison and the plaintiff, who were both present, declared that the latter had purchased the interest of the former in the said land, and was ready to make the payment remaining due, on receiving a conveyance of the title. The defendant, George W. Locke, was perfectly willing that this arrangement should be made, and the creditors and administrators approved of it,- as one beneficial to the estate. But a difficulty arose in this, that one Solomon Jacobs claimed a part of the land, so contracted to be sold, as being held by him under a superior title, and offered such proof of his lines by one Losenby, that the administrators were unwilling to convey any more of the land than was left free from dispute as to title. It does not appear distinctly whether the defendant George W. Locke was a party to the arrangement ultimately made, but it was then agreed that the plaintiff, as the assignee of Madison, should take so much of the land sold, amounting to about 46 acres, as was uncovered by the claim of Soloman Jacobs, at the price of two dollars per acre, pay to the administrators of Locke what remained due at that rate from Madison, and take to himself a conveyance of the land. The plaintiff thereupon paid — or secured to be paid- — -to the administrators the balance estimated to be so due from Madison. They were charged therewith in their settlement with the creditors of their intestate, and they, on the 5th of June, 1823, executed their deed for the land, describing it by metes and bounds as set forth in the plaintiff’s bill.
 

 Upon these facts it seems to us, that the plaintiff ought to have some relief; but we are not prepared to decide on the
 
 *290
 
 °r extent re^ef> lint^ some matters be ascer-which do not yet clearly appear. He is the acknowledged assignee of Madison, and, as such, substituted to the rights, which the latter acquired by his purchase from Locke. After that purchase, in the contemplation of this court, Madison was the owner of the Stewart land, and Locke retained the title as a security for the,payment of the residue of the purchase money. Had that been paid by the plaintiff to the administrators of Locke, according to the terms of the contract, he would have been entitled to a conveyance from the heirs of the entire tract. But he paid only for 46i acres, and he asks for a conveyance of the part so paid for, because, as he alleges, the vendor had not the ability to make title, to more. Where a vendor cannot make a legal title to the whole of the land sold, his vendee may insist upon a specific execution of the contract, so far as the vendor can execute it. From the proofs, it appears that the administrators of Francis Locke admitted that there was this defect of title, but the admission of the administrators in no way binds the heirs. They have therefore a right to have this matter investigated. Besides, it does not appear, supposing that there was a defect of title in the vendor to part of the land sold, what was the fair value of the residue, as compared with the stipulated price of the entire tract. The administrators had not a right to remodel the contract of their intestate, but only to receive what was equitably due thereon, and it may be that the average value per acre of the part of the land to which their intestate-had title, and with respect to which the plaintiff prays a specific execution of the contract, exceeded the average price per acre of the entire tract. We require to be definitively informed, 1st, what is the number of acres in the Stewart tract, which the late Francis Locke sold to the defendant Madison, and what-the number of acres within the bounds of the tract conveyed by the administrators of Francis Locke to the plaintiff; 2dly, whether the said Francis Locke, at his death, had the ability to make a clear title to that part of the Stewart tract, which was sold by him to Madison, but is not included in
 
 the convey-
 
 
 *291
 
 anee to the plaintiff; 3dly, what was, at the death of Francis Locke, the fair price per acre, of the land so conveyed, as compared with the price per acre of the whole tract as sold. It is probable that the parties, being apprized of the special matters, respecting which we want precise information, may, by agreement between themselves, furnish it without delay. But if they should not, the Clerk and Master of the Court of Equity of Iredell county must be directed, as commissioner, to make the enquiry of these matters, and report the result to the court.
 

 Per Curiam. Ordered accordingly.