JOSEPH SMITH and wife v. FRANK BRISSON and wife and others.

*Deed, a fee may be limited after a fee under the Statute of Uses.*

1. A fee-simple may be limited after a fee-simple either by deed or will, by operation of the statute of uses; if by deed, it is a conditional limitation ; if by will, it is an executory devise.

2. An estate to A and the heirs of his body, but if he die without such heirs living at the time of his death, then to the heirs of B; *Held,* that the limitation over is good. (The case is governed by the act of 1827 and 1856, in reference to contingent limitations and construing "heirs" to mean "children"; and the act of 1784, changing an estate tail into a fee).

3. Springing and shifting uses and · conditional limitations discussed by ASHE, J.

(*McBee, ex parte,* 63 N. C., 332, overruled ; *Folk* v. *Whitley,* 8 Ired., 133, approved).

EJECTMENT tried at Spring Term, 1883, of ROBESON Superior Court, before MacRae, J.

The action was tried by the court upon a case agreed and a jury trial waived, except as to the amount of damages.

It was agreed that both the plaintiffs and defendants claim under a deed executed by Rowland Mercer, Sr., to Rowland Mercer, Jr., dated the 30th of August, 1859, the important part of which is as follows: " For and in consideration of the natural love and affection I have for my son, Rowland Mercer, and the further sum of one dollar to him in hand paid, the receipt of which is hereby acknowledged, has given, granted, bargained, sold and conveyed, and do hereby give, grant, bargain, sell and convey to the said Rowland Mercer and the heirs of his body, and if the said Rowland Mercer should have no heirs, the said land shall go to the heirs of my son James A. Mercer, all that tract of land," described as in the complaint.

It was admitted that Rowland Mercer, Jr., died on the 10th day of November, 1871, without ever having had any children, and that James A. Mercer was living at the date of the said deed executed on the 30th of August, 1859, and had living children at that time, the defendant, Orren Mercer, being one of them. The land in controversy was devised by Rowland Mercer, Jr., to the *feme* plaintiff, who was then his wife, but has since intermarried with the other plaintiff, Joseph Smith. It was agreed if upon the above state of facts the plaintiffs are entitled to recover, judgment is to be rendered for them; if not, for the defendants.

His Honor being of opinion with the plaintiffs, upon the jury's returning a verdict assessing the plaintiffs' damages, adjudged that they recover the damages so assessed and that a writ of possession issue. From which judgment the defendants appealed.

*Messrs. French & Norment,* for plaintiffs.

*Messrs. Frank McNeill, T. A. McNeill* and *J. D. Shaw,* for defendants.

ASHE, J.   Both parties to this action claim title to the land described in the complaint under the deed executed by Rowland Mercer, Sr., to Rowland Mercer, Jr., on the 30th day of August, 1859.

The plaintiffs contend that the deed conveyed an absolute estate in fee simple in the land to Rowland Mercer, Jr., and by his will the fee simple title to the same was devised to the *feme* plaintiff.

The defendants, on the other hand, insist that the deed conveyed only a determinable fee to Rowland Mercer, Jr., which terminated by his death without children, and vested an absolute fee simple, by the limitation in said deed, in the children of James A. Mercer.

The deed in question is to be construed as if it read, to the said Rowland Mercer and the heirs of his body, and if the said Rowland Mercer should die not having such heirs living at the time of his death, the said land shall go to the children of my son James A. Mercer.

By the act of 1827, ch. 7 (Bat. Rev., ch. 42, §3), it is provided, "that every contingent limitation in any deed or will made to depend upon the dying of any person without heir or heirs of his body, shall be interpreted a limitation to take effect when such person shall die not having such heir or issue living at the time of his death."   And by the act of 1856 (Bat. Rev., ch. 43, §5), "any limitation by deed, will or other writing to the heirs of a living person, shall be construed to be the children of such person, unless a contrary intention appear by the deed or will."

The defendants especially relied upon the case of *McBee, Ex-parte*, 63 N. C., 332, which was a conveyance to W. J. Stowe, "to have and to hold the said land to his heirs, executors and administrators for and during the period of his natural life; at his death to go to the heirs of his body, to them, their heirs and assigns forever.   And in default of heirs of his body living at his death, said property to go to L. J. P. and the heirs of her

body." It was held this vested in W. J. Stowe an estate tail, and by the act of 1784 it was changed into a fee simple, and that the limitation over, "and in default of heirs of his body living at his death, to go to L. J. P. and the heirs of her body, was void."

The only authority relied upon for this decision was *Folk* v. *Whitley*, 8 Ired., 133. The decision in that case was made upon the construction of a will in which the testator devised as follows: "I lend to Benjamin Whitley, son of Elizabeth Nobles, all the lands I own in Conchoe Island," &c., (being the premises in controversy) "during his natural life, and after his death I give the above mentioned land to his heirs, lawfully begotton, to them and their heirs forever; and in case he (the said Benjamin) should die without lawful issue of his body, then I lend the above mentioned land to his brother, Henry Whitley, in manner as aforesaid."

This will was made in 1791, and it was held, Chief-Justice RUFFIN speaking for the court, that the words used in the will, "heirs lawfully begotten," were words of limitation and not of purchase, and that Benjamin Whitley took an estate tail by the application of the rule in *Shelly's* case, which was converted into a fee simple under the act of 1784, and that the limitation over was void."

It is always with great reluctance we find ourselves constrained to differ with our brethren who preceded us on the bench, but in the case of *McBee* we are forced to the conclusion that they overlooked the true ground upon which the case of *Folk* v. *Whitley* was decided. It was not because a fee simple was given to Benjamin Whitley and therefore the limitation over was void, but because the will having been made before our act of 1827 the limitation over was too remote. The court say on page 138: " It is clear, therefore, that Benjamin, the son, took an estate tail by the words of the devise to him, and, consequently, that the limitation over to Henry was after *an indefinite failure of the issue of Benjamin*. The effect then is that

the fee into which the act of 1784 turns the estate tail became absolute in Benjamin, and Henry and his heirs take nothing." But in *McBee's* case the limitation over was not too remote. So the authority relied on did not sustain the conclusoin of the court in that case.

At common law a fee simple could not be limited after a fee simple. There was no way known to that law by which a vested fee simple could be put an end to and another estate put in its place; and the reason is, because no freehold could pass without *livery of seizin*, which must operate immediately or not at all.

But after the Statute of Uses, 27 HENRY VIII., when the possession of the legal estate was transferred to the use, vesting the legal estate in the *cestui que use* in the same quality, manner, form and condition that he held the use, and the courts of law assumed jurisdiction of uses, it was held that an estate created by a deed operating under the statute might be made to commence *in futuro* without any immediate transmutation of possession; as by a bargain and sale, or a covenant to stand seized to uses. " *Cessante ratione cessat et lex.*" And consequently it was held that, by such conveyances, inheritances might be made to shift from one to another upon a supervening contingency, which to avoid perpetuities was required to be such as must happen within a life or lives in being, and the period of gestation and twenty-one years thereafter.

Thence arose the doctrine of springing and shifting uses, or conditional limitations. A springing use is one which arises from the seizin of the grantor, and where there is no estate going before it; but a conditional limitation, or shifting use, is always in derogation of a preceding estate. 2 Minor's Inst., 816. An example of this is where an estate is conveyed by bargain and sale or by covenant to stand seized to A and his heirs, but if B shall pay to A one hundred dollars within thirty days, then B and his heirs.

It was under this doctrine of a shifting use that it has been

held since very early after the statute of uses, that a fee-simple may be limited after a fee-simple, either by deed or will; if by deed, it is a conditional limitation; if by will, it is an executory devise. "And in both these cases a fee may be limited after a fee." 2 Blk. Com., 235.

Mr. Hargrave, in Note A, 2 Coke, 271b, which is an elaborate treatise on the subject of uses, says: "It is a maxim of the common law that no estate can be limited upon a fee-simple; or in other words, an estate in fee-simple cannot be made to cease as to one, and take effect, by way of limitation, upon a contingent event, in another person." But he adds: "It is clearly settled that limitations of that kind may take effect by way of use."

And Mr. FEARNE, in his work on Remainders, treating of conditional limitations, says: "If before the statute of uses, land had been conveyed to A and his heirs, with a proviso, that if A should not leave any child of his body living at the time of his decease, the land should go over and belong to B and his heirs, it it obvious that the limitation to B must be legally void. It cannot be a grant of the reversion, as the whole fee was previously granted; or the grant of a remainder, as it was preceded by no particular estate. It would not confer a title on B to enter for a condition broken, as such a title of entry could only belong to the grantor or his heirs." And he proceeds to say, "that they so far partake of the nature of a remainder, that when the event happens upon which they are to take effect, the estate created by them passes to a stranger; and they so far partake of the nature of a title to enter for the breach of the condition, that when the event takes place they operate to defeat the preceding estate." The same doctrine is maintained in 2 Minor's Inst., 265; 1 Saunders on Uses and Trusts, 150.

Conditional limitations had no existence at common law, and only arose out of conveyances having operation under the statute of uses, the effect of which was to dispense with livery of seizin; 2 Minor's Inst., 264. For the purpose of limiting over estates,

they are generally treated as synonymous with shifting uses. They seem to have been so considered by Mr. FEARNE, in the extract above, taken from his work on Remainders.

It is said that a seizin is necessary to serve the use, and some of the ablest jurists of England have taxed their ingenuity to find where the seizin lies to support a limitation over, after the seizin of the feoffor or feoffee has been extinguished by the operation of the statute. Some have said there was a "scintilla juris" remaining in the feoffor or feoffee, and others contended that the doctrine is a mere utopian idea, but wherever the seizin may be, the courts have never, so far as we have observed, permitted a conditional limitation to fail for the want of a seizin to serve the use by which it was raised.

The statute of uses is in force in this state. THE CODE, §1330. And the deed, under which both parties to the action claim title to the land in controversy, has its operation under the statute, and as the consideration mentioned in it is both pecuniary and natural affection, it may operate either as a bargain and sale, or as a covenant to stand seized as to both the parties, for they are all the blood relations of the grantor.

Our conclusion is that the limitation over to the children of James A. Mercer was good, and that there was error in the court below in not rendering judgment in their behalf upon the case agreed.

The judgment, therefore, of the superior court is reversed, and judgment must be rendered on behalf of the defendants.

Let this be certified, etc.

Error.                                                        Reversed.