ANNIE H. CAMPBELL v. ELIZA W. CRONLY ET AL.*

(Filed 14 April, 1909.)

1. **Deeds and Conveyances—Purchaser—Doubtful Title—Suits—Courts—Equity Jurisdiction—Specific Performance.**

    A purchaser of land is not required to take a doubtful title; and when parties have entered into a contract to sell land, and the purchaser has refused to comply because of doubts entertained in regard to title, the court will treat an action by the vendor against the vendee as a bill for specific performance.

2. **Deeds and Conveyances—Doubtful Title—Actions—Cloud on Title—Courts—Statutory Jurisdiction.**

    The Revisal, sec. 1589 (Laws 1893, ch. 6), enlarges the power of the courts to entertain suits to quiet titles, where the conditions were formerly such that a possessory action could not be brought; and this statute is liberally construed, so that the court can acquire jurisdiction to clear up obscure contingent limitations which are imposed upon titles.

3. **Same—Controversy Without Action.**

    The courts will hear and determine a controversy submitted without action in suits brought by and against the parties in interest, wherein the vendee has refused to accept the title on the ground of its being doubtful, either in its equitable jurisdic-

---

*WALKER, J., did not sit.

tion as treating the controversy as a bill for specific performance
or under the provisions of the Revisal, sec. 1589, for the pur-
pose of removing clouds upon obscure titles.

4. **Deeds and Conveyances—Estates—Uses and Trusts—Limitations
Upon Fee—Equity.**

An estate to one, with a declaration of the use to grantor's
wife and two named daughters, in fee, "and to the survivors of
them," will, nothing else appearing, vest the use of the fee in the
two daughters after the death of the wife; for, though no estate
could be limited upon a fee simple, at common law, a limitation
of this kind may take effect by way of a shifting use.

5. **Deeds and Conveyances—Uses and Trusts—Estates—Construc-
tion—Intent—Language Used—Legal Phrases—Determinable
Fee.**

An estate to one, with a declaration of the use to grantor's
wife and two named children, in fee, "and to the survivors of
them," the conveyance further providing that if the said daugh-
ters "shall die leaving issue, then to the use of such surviving
issue, who shall take the same *per stirpes,* and not *per capita,*"
does not vest the fee in the daughters upon the death of the
wife; the grantor's intent appearing, both from the usual and
legal significance of the language employed, to create in the
daughters a determinable fee, and, upon the death of either, the
use would shift and vest in the "surviving issue."

6. **Deeds and Conveyances—Estates—Descriptive Words—Legal
Phrases—Construction.**

When the language employed in a conveyance of land as to the
estate passed thereby has a clearly defined legal signification,
there is no room for construction to ascertain the intent; and
when the intent of the grantor appears from the use of customary
language to be that given by law to the legal phrases also used
in connection with the subject matter, the latter will be con-
strued as showing that the grantor desired to remove any doubt
as to the interest conveyed.

7. **Same—Living Issue—Succession of Survivorship—Purchasers—
Estates.**

An estate in trust to the use of grantor's two daughters, pro-
viding in the deed that if said daughters "shall die leaving living
issue, then to the use of such surviving issue, who shall take the
same *per stirpes,* and not *per capita,*" creates a succession of
survivorships in the living children and grandchildren of the
daughters, who may take as purchasers upon the happening of
the event, and the daughters named cannot convey to a purchaser
a good and indefeasible title.

**8. Deeds and Conveyances—Succession of Survivorship—Children and Grandchildren—Purchaser.**

When a deed in trust creates a succession of survivorships, in the use of lands, to the children and grandchildren of B. and C., a deed from a child of C. to the *locus in quo* in the lifetime of B. and C. vests in him his interest only; so that, if the child should die, leaving issue, before the death of his parent, such issue would take as a purchaser under the limitations declared.

BROWN, J., concurring in part; CLARK, C. J., dissenting.

ACTION tried before *W. R. Allen, J.,* upon an agreed state of facts, at January Term, 1909, of NEW HANOVER.

Both sides appealed.

This is a controversy submitted without action for the purpose of quieting title to real estate pursuant to section 1589 of the Revisal.

The agreed facts are: On 20 May, 1869, H. C. Brock conveyed to William B. Flanner the land in controversy, being a lot in the city of Wilmington, upon certain trusts, fully set forth in the deed, which was duly admitted to probate and registration. On 2 March, 1895, certain persons, entitled to beneficial interest in said property, instituted an action in the Superior Court of New Hanover County against certain other persons, likewise interested, and the heirs at law of the trustee, who had died, for the purpose of having certain corrections made in said deed, all of which will fully appear by reference to the record in said cause, made a part of the case agreed. Pursuant to the prayer of the plaintiffs, judgment was rendered by said court correcting said deed by inserting words "of inheritance" therein, which had been inadvertently omitted by the draughtsman. The deed, as corrected by said judgment, vested the title to said real estate in the said W. B. Flanner, in fee, upon the following trusts: To hold for the use of Emily B. London, her heirs and assigns, wife of Mauger London, and Annie H. London, her heirs and assigns, and Eliza W. London, her heirs and assigns, children of the said Mauger London, and the survivors of them. Provided, however, that if the said Annie H. London or Eliza W. London shall die leaving issue, then to the use of such surviving issue, who shall take the same *per stirpes,* and not *per capita:* And provided further, that if the said Annie H. or Eliza W.

should die without issue, leaving the said Emily B. surviving,
then to the use of the said Emily B. and such survivors; and if
the said Annie H. and Eliza W. should die, leaving the said
Emily B. surviving, then to the use of the said Emily B. during
her life; and if she should die leaving issue, then to the use of
such issue and their heirs; and if the said Emily B. should die,
leaving the said Annie H. or Eliza W. surviving, then to the
use of such survivors. And in case of the death of the said
Emily B., Annie H. and Eliza W. without issue, then to the
surviving children of the said M. London and their issue, if any
such said children be living, to take *per stirpes,* and not *per
capita.* Mauger London, who is mentioned in the said deed,
died intestate on 10 May, 1894. He left him surviving his wife,
Emily B. London, and, by a former marriage, his child, Annie
H. London. Emily B. London, who was the second wife of
Mauger London, and who is mentioned as one of the beneficiaries
under the aforesaid deed, died on 6 June, 1897, leaving her sur-
viving Eliza W. Cronly, her only child and sole heir at law. On
16 March, 1903, all of the heirs of Mauger London executed
their deed to Annie H. Campbell and Eliza W. Cronly, convey-
ing any and all such right, title and interest which they had in
said real estate. Said deed was duly proven and recorded.
Annie H. London married Archibald R. Campbell. The only
child by this union was James Douglas Campbell, now living.
Eliza W. London married Joseph M. Cronly, and is now a
widow. By her marriage she has had three children, to wit:
Jean Murphy, Robert Dixon and Margaret Cronly, all of whom
are minors, but in this proceeding are represented by George
H. Howell, their duly appointed guardian *ad litem.* The said
Annie H. Campbell and Eliza W. Cronly, claiming that as
tenants in common they are the owners in fee of the said prop-
erty, agreed to sell the same for the sum of twelve thousand
dollars to the defendant, John London, but he is advised that
the said parties are not seized in fee of the said property, and
have only a life estate therein, and that upon the determination
of the life estate the property descends to their issue, and he
declines to purchase the property until it is determined whether
the said parties have a life estate or fee simple in said property;

but if it is adjudged that they have a right to convey, he stands ready, and is able, to comply with his contract of purchase. Eliza W. Cronly contends that she has an undivided two-thirds (⅔) interest in the property; that the deed of trust from Brock to Flanner vested a fee simple in Emily B. London, her mother, Annie H. Campbell, and herself, each having an undivided one-third (⅓) interest therein; that, by the death of Emily B. London, her mother, she, the said Eliza W. Cronly, inherited, as her sole heir, the undivided interest vested in the said Emily B. London, and that by reason thereof and her own one-third interest in her own right she is vested with an undivided two-thirds interest in the fee in said property. Annie H. Campbell contends that by the deed of trust from Brock to Flanner the property vested in Emily B. London, Eliza W. London and herself, and, upon the death of the said Emily B. London, by survivorship, the fee vested in Annie H. Campbell and Eliza W. London, in equal parts, and therefore she contends that she has an undivided one-half (½) interest therein. The minor defendants, Jean Murphy Cronly, Robert Dixon Cronly and Margaret Cronly, by their guardian *ad litem,* George H. Howell, make no contention in regard to the title to said premises, but will abide the judgment of the court upon the facts here agreed as to any rights, future or contingent, they might have under the deed of Brock to Flanner, trustee.

His Honor was of the opinion, upon the foregoing case agreed, that the plaintiff, Mrs. Annie H. Campbell, and the defendant Mrs. Eliza W. Cronly were the owners in the proportion of one-half each of the real estate in controversy; that upon the death of each their interest will pass to their "heirs at law, such heirs to take *per stirpes";* that they could not convey the land in fee simple to the purchaser. Judgment was rendered accordingly. Plaintiff, Mrs. Campbell, and defendant Mrs. Cronly assigned error and appealed.

*Empie & Empie* for plaintiff.
*Meares & Ruark* for defendant.

CONNOR, J., after stating the case: When this cause was before us on appeal, at the last term, the purchaser of the land was

not a party. We remanded the case, to the end that further parties be made, which has been done. The first question which confronts us is whether, in the present condition of the record, we can take jurisdiction and decide the several questions presented in regard to the title to the *locus in quo*. This Court has frequently entertained and decided controversies wherein parties have entered into a contract to sell land and the purchaser has refused to comply because of doubts entertained in regard to the title. We have treated such suits as bills by the vendor against the vendee for specific performance. It is well settled, by uniform decisions of this and other courts of equitable jurisdiction, that the purchaser will not be required to take a doubtful title. It therefore became necessary to inquire into the vendor's title, which was sometimes done by a reference to the clerk and master, or a referee selected for that purpose. Bispham Eq., sec. 378; *Gentry v. Hamilton,* 38 N. C., 376. While the vendee will not be required to pay the contract price and take a doubtful or imperfect title, he may, if he so elect, and it be not inequitable, have a decree for such part of the land or such interest as the vendor can convey, with a deduction from the contract price. Mr. Bispham thus states the equitable doctrine: "It may sometimes happen that defects exist which render the property less valuable than the contract price, but which, nevertheless, may not be of so vital a character as to induce the purchaser entirely to throw up his bargain. In such a case the equity of specific performance with compensation comes into play for the benefit of the vendee." Equity, 390. It is said, in the note to *Seton v. Slade,* 7 Ves., 265 L. C. Eq., Vol. II, part 11, 15: "It may be laid down as a general rule, subject, however, to some exception, that a purchaser may, if he chooses, compel a vendor who has contracted to convey a larger interest in an estate than he has, to convey to him such interest as he is entitled to with compensation." Lord Eldon, in *Mortlock v. Buller,* 10 Ves., 315, says: "For the purpose of this jurisdiction, the person contracting under those circumstances is bound by the assertion in his contract, and if the vendee choose to take such as he can have, he has a right to that, and to an abatement, and the Court will not hear the objection by the vendor that the

purchaser cannot have the whole." *Jacobs v. Lock,* 37 N. C., 286. In such cases it becomes necessary for the court to inquire into the state of the title of the vendor, to the end that it may mould its decree as to do complete equity to all of the parties. So, in this appeal, if the vendor so desires, he may, unless it would be inequitable, acquire, under his contract of purchase, at a reasonable deduction from the contract price, such interest, if any, as either of the vendors have a right to convey. There is, however, another ground upon which a majority of the Court are of the opinion that we have and are compelled to take jurisdiction and decide the controversy in regard to the disputed title. It is well settled that, prior to the statute of 1893, chapter 6, Revisal, sec. 1589, the jurisdiction of courts of equity to entertain bills to remove cloud from title or to quiet title was restricted within well-defined limits. *Busbee v. Macy,* 85 N. C., 329; *Busbee v. Lewis, ib.,* 332. In the opinions in these cases by *Ruffin, J.,* this Court adhered to the decisions in this and other States, many of which he cited and commented upon. *Pearson v. Boyden,* 86 N. C., 585, and cases cited. The Legislature, at the session of 1893, enacted a statute for the purpose of enlarging the power of the courts to entertain suits to quiet titles where the conditions were such that a possessory action could not be brought. Of course, if the plaintiff had a complete remedy by means of a civil action, there was no necessity for resorting to the statutory remedy. *Pearson v. Boyden, supra.* The material part of the statute is in the following words: "An action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claim."

Prof. Pomeroy (4th Eq., sec. 1396), after discussing the jurisdiction of courts of equity prior to the passage of this and similar statutes in other States, says: "The action has been greatly extended by statute, and in many States is the ordinary mode of trying disputed titles." He gives, in a note, a list of the States in which the statutes have been enacted. He further says: "In almost every instance the statutes, either by express terms, or through broad and general language, allow the action to be maintained by persons having equitable titles; in other words,

CAMPBELL *v.* CRONLY.

a plaintiff need not have a legal title.   *   *   *   The statute is an enabling act, and the action may be brought against one or more claimants without regard to the interest or title—legal or equitable—which he, or the plaintiff, may have." The California statute is in the same words as ours. *Chief Justice Field,* in *Curtis v. Sutter,* 15 Cal., 259, says: "It is unnecessary for the plaintiff to delay seeking the equitable interposition of the court until he has been disturbed in his possession by the institution of a suit against him and until judgment has been passed in such suit in his favor. It is sufficient if, whilst in the possession of the property, a party out of possession claims an estate or interest adverse to him. He can immediately, upon knowledge of the assertion of such claim, require the nature and character of the adverse estate or interest to be produced, exposed and judicially determined and the question of title be thus forever quieted. It does not follow from the fact that the suit is brought in equity that the determination of questions purely of a legal character in relation to the title will necessarily be withdrawn from the ordinary cognizance of a court of law. The court sitting in equity may direct, whenever in its judgment it may become proper, an issue to be framed upon the pleadings and submitted to the jury.   *   *   *   There is no difficulty in so conducting a suit, under the statute, as to fully protect the legal rights of the parties and, at the same time, to secure the beneficial results afforded by a court of equity in bills of peace—which is, repose from further litigation. Indeed, the remedy under the statute is eminently simple, direct and efficacious for this purpose." The Nebraska statute, being practically in the same language, was discussed by the same eminent jurist while a Justice of the Supreme Court of the United States, in *Holland v. Challen,* 110 U. S., 15 (L. C. Ed., book 28, p. 52), when he said: "Any person claiming title to real estate, whether in or out of possession, may maintain the suit against one who claims an adverse estate in it for the purpose of determining such estate and quieting the title. It is certainly for the interest of the State that this jurisdiction of the Court should be maintained and that causes of apprehended litigation respecting real property necessarily affecting its use and enjoyment should

be removed; for so long as they remain they will prevent improvement and consequent benefit to the public. It is a matter of every-day observation that many lots of land in our cities remain unimproved because of conflicting claims to them. * * * It is manifestly to the interest of the community that conflicting claims to property thus situated should be settled so that it may be subject to use and improvement. To meet cases of this character, statutes like the one in Nebraska have been passed by several States, and they accomplish a most useful purpose." It was held that the Federal courts would enforce the statutes when they had jurisdiction by reason of diverse citizenship. In *Parish v. Ferris,* 67 U. S., 606, the Ohio statute was enforced. See, also, *Fry v. Summers,* 39 Pac. (Idaho), 1118, where the statute was in the same language as ours. In *Walton v. Perkins,* 33 Minn., 357, *Mitchell, J.,* says: "This statute is intended to afford an easy and expeditious mode of determining all conflicting claims to land, whether derived from a common source or from different and independent sources." In *Adler v. Sullivan,* 115 Ala., *Harrolson, J.,* says: "The statute is an extension of the remedy in equity theretofore existing for the removal of clouds on title." Discussing the equitable remedy, prior to the statute, he says: "This statute goes in advance of that remedy and in addition allows any person in peaceable possession of lands claiming to own the same, whose title thereto or any part thereof is denied or disputed, or where any other person claims, or is claimed or is reputed to own the same or any interest therein or to hold any lien or encumbrance thereon, and no suit shall be pending to enforce or test the validity of such title, claim or encumbrance, to bring and maintain a suit in equity to settle the title to said lands and clear up all doubts and disputes concerning the same." In *Holmes v. Chester,* 26 N. J. Eq., 79, the Chancellor, discussing a similar statute, says: "It is highly remedial and beneficial. It should therefore be construed liberally. It is a statute of repose. It deprives the defendant of no right. His claim may be tried at law if he desires it." So *Beasly, C. J.,* in *Jersey City v. Lembeck,* 31 N. J. Eq., 255, says: "The inequity that was designed to be remedied grew out

150—30

of the situation of a person in the possession of. land as owner, in which land another person claimed an interest which he would not enforce; and the hardship was that the person so in possession could not force his adversary to sue and thus put the claim to the test." *Albro v. Dayton,* 50 N. J. Eq., 574. This Court, in *Daniels v. Fowler,* 120 N. C., 14, held that it was not necessary that plaintiff should be in possession of the property to maintain his action. In *Rumbo v. Mfg. Co.,* 129 N. C., 9, it was held that when the alleged cloud upon the title was found to be invalid the Court should not dismiss the action, but should adjudge such invalidity and remove the cloud. The present Chief Justice said: "It was because the Legislature thought the equitable doctrines (as laid down in *Busbee's case)* inconvenient or unjust that the act (1893) was passed." *Beck v. Meroney,* 135 N. C., 532; *McLamb v. McPhail,* 126 N. C., 218. The statute provides that if the defendant disclaims title the cost is adjudged against the plaintiff. The wisdom of enlarging the power of the court to deal with the subject is manifest. It is highly important to private right and public interest that titles shall be rendered secure and certain. As said by *Judge Field,* it is a matter of common observation that in almost every town or city, lots either without any improvement, or such as have been erected in the past falling into decay—the growth and development of the town impeded by some obscure, uncertain cloud upon, or question in regard to, the title. In many cases, without the aid of the statute it is impossible to bring the claimants before the court and have them assert and "try out" their claim. It sometimes happens that obscure contingent limitations imposed upon titles operate to impoverish an entire generation when, upon a careful judicial examination, the title may be cleared up, rights adjudged and property unfettered, bringing it either into market or enabling the owners to improve and receive an income from it. It is this evil which the Legislature has sought to remedy by providing a simple, inexpensive and efficient procedure which the courts, by reason of precedents from which they were unwilling to break away, were unable to afford. The unanimity with which the judges have recognized the wisdom of the legislation, giving it a liberal construction, has made it effective.

This brings us to a consideration of the assignments of error made by both plaintiff and defendants to his Honor's judgment. The conveyance by Mr. London to Flanner, trustee, vests the legal title in him in fee, with a declaration of the use to Mrs. London, his wife, and Annie H. and Eliza W., his daughters, in fee, "and to the survivors of them." Whatever difficulty we would have found in giving effect to these last words in a common-law conveyance, operating by livery of seizin, is obviated in a deed operating under the statute of uses in which the intention of the grantor may be effectuated. "It is a maxim of the common law that no estate can be limited upon a fee simple; or, in other words, an estate in fee simple cannot be made to cease as to one and take effect, by way of limitation, upon a contingent event, in another person. It is clearly settled that limitations of that kind may take effect by way of use." Coke Lit., 271 (note), cited by *Mr. Justice Ashe,* in *Smith v. Brisson,* 90 N. C., 284, where the authorities are collected. In *Rowland v. Rowland,* 93 N. C., 215, the conveyance was to two children of the grantor in fee as tenants in common, "and, upon the death of either one, then to the survivor and his or her heirs forever." *Ashe, J.,* said: "Its effect was to transfer the use to the two donees in fee, and upon the death of Ophelia to shift the use of her moiety to John and his heirs. By a shifting use a fee may be limited after a fee." After an interesting discussion of the subject, the learned Justice says: "Our opinion is, a defeasible fee in common was given to Ophelia and John and, upon the death of Ophelia, the absolute fee vested in John as survivor, because such was the manifest intention of the donor, and because that construction is not in violation of any principle of law or rule of construction." Mordecai's Lectures, 871. This authority is conclusive to the effect that, by way of a shifting use, the beneficial interest in the entire property, upon the death of Mrs. London, vested in Annie H. and Eliza W. London in fee. Did it vest in them absolutely, or did the right of survivorship attach, carrying the equitable title, or use, to the last survivor? It will be observed that the grantor uses the words "and to the survivors of them." If controlling effect is given the word "survivors," the language of the deed is complied

with upon the death of Mrs. London, and the daughters take the entire estate absolutely. In *Hilliard v. Kearney,* 45 N. C., 221, *Pearson, J.,* discusses the question of successive survivorships at much length. There the property was given to five daughters, with a proviso that if either of them died without issue, "her part to be equally divided between her other sisters." It was held that upon the death of the first sister without issue the shares of the survivors became absolute. He invokes the rule that when the language of the maker of the instrument leaves his intention in doubt, that construction will be adopted which will make the estate "absolute and indefeasible." It is said, in *Cox v. Hogg,* 17 N. C., 121, that in ascertaining whether a succession of survivorships is created, the Court will examine other parts of the will. In *Fortescue v. Satterthwaite,* 23 N. C., 566, the limitation was made to depend upon the death of either of the first takers without children, when the property passed to "the children then living." These words were held to create a succession of survivorships. We have examined the cases in our reports, and, as said by *Judge Battle,* in *Biddle v. Hoyt,* 54 N. C., 159, it is difficult to extract any satisfactory principle from them. In *Galloway v. Carter,* 100 N. C., 111, the limitation was dependent upon "any or either" of the children dying without issue, etc. These words, together with others of like import, were held to create a succession of survivorships. In view of the use of the word "survivors," and the fact that the grantor attaches a limitation to the issue of his daughters, if either of them should die leaving issue, we conclude that, upon the death of Mrs. London, the entire use or interest vested in the daughters in fee.

This would dispose of the appeal, but for the words which follow: "Provided, however, that if the said Annie H. or Eliza W. London shall die leaving issue, then to the use of such surviving issue, who shall take the same *per stirpes,* and not *per capita."* These words would create in the daughters a determinable fee and, upon the death of either, the use would shift and vest in the "surviving issue," unless the superadded words, "they to take *per stirpes,* and not *per capita,"* denotes that the grantor used the word "issue" as synonymous with "heirs" and,

by directing the title in the same channel as it would be carried by the canons of descent, make the children and grandchildren of his daughters take by descent and not by purchase. We think that it was the intention of Mr. London to settle the property, in the event which has happened—the death of his wife—upon his daughters, with a limitation to their children and the children of such of them as should predecease their parents, and that he used the words that they should take *"per stirpes, and not per capita"* to remove any doubt in respect to the interests which they would take. Having given it to the daughters in fee, he certainly could not have intended to attach a limitation for their issue, which was ineffectual and left the estate in the same plight as it was by the language first used. He intended that the word "issue" should include grandchildren of his daughters whose parents had predeceased them, with the provision that such grandchildren should take by representation—that is, the shares or interest which their deceased parent would have taken if surviving. When language is used having a clearly defined legal signification, there is no room for construction to ascertain the intent; it must be given its legal meaning and effect. This is illustrated by what is said in *Leathers v. Gray,* 101 N. C., 162, in which *Merrimon, J.,* says: "The real intention must have effect, but the real intention recognized and enforced by the law is that expressed in the will, and this is to be ascertained by a legal interpretation of the language employed to express it," or, as the learned Justice says, in the same case, "He must express his intention in words appropriate and sufficient to express his real meaning, and if he employs technical legal words, the technical meaning must prevail, unless the same shall be qualified, or modified, by superadded words in the will." When, however, the words of limitation are of doubtful meaning, or their usual meaning, as used, is rendered doubtful by superadded words and we are compelled to resort to construction, they must, if possible, be given such construction as will effectuate the intention of the maker of the deed or will. The word "issue" has been construed to include grandchildren when it was manifest that it was so intended, just as the word "heirs" has been restricted to children when words are

CAMPBELL *v.* CRONLY.

superadded showing such intention. *Mills v. Thorn,* 95 N. C., 362. If by this deed the limitation had been to the children of Annie H. and Eliza W. and the children of such as should die before their ancestor, such children to take the share of their parent by representation, it is clear that the rule in *Shelley's case* would not have operated to vest in the daughters the fee. If by construction we give the words used by Mr. London the same meaning, the same result would follow. The other limitations are eliminated by the death of Mrs. London, leaving Annie H. and Eliza W. living and the deed from the children of Mr. London to Mrs. Campbell and Mrs. Cronly.

We conclude, therefore, that his Honor correctly held that the plaintiff Mrs. Campbell and the defendant Mrs. Cronly cannot convey to the purchaser a good and indefeasible title to the *locus in quo.* The conveyance by James Douglas Campbell to his mother vests in her his interest, but if he should die leaving issue before his mother, such issue would take as a purchaser under the limitation in the deed.

The judgment must be

Affirmed.

BROWN, J. I concur in the opinion written by *Mr. Justice Connor* in this case so far as it passes upon the title to the property contracted to be sold by Annie H. Campbell and Eliza W. Cronly and holding that they cannot make to the purchaser London a good and indefeasible title in fee.

At a former term we remanded the cause, to the end that the purchaser be made a party, which has been done. Having then treated the matter as a *bona fide* controversy submitted without action, under our Code, to compel specific performance of a contract to purchase land, and our order having been complied with, I see no reason now why the controversy should not be determined.

We have heretofore treated such controversies submitted without action upon agreed facts, where *bona fide,* as bills in equity by the vendor against the vendee for specific performance.

I do not agree, however, that the act of 1893, referred to in the opinion, will permit any kind of a dispute about the title

CAMPBELL *v.* CRONLY.

to land to be brought before the courts under the guise of a "controversy submitted without action," simply to obtain the opinion of the court upon an abstract proposition or a moot point in a matter where no present relief can be had or no final judicial process issued.

As there is nothing in the record which impeaches the *bona fide* character of this controversy between vendors and vendee, I concur that the judgment of the Superior Court should be affirmed.

CLARK, C. J., dissenting: In the case on appeal it is stated: "This action is brought by the plaintiff against the defendants to determine the rights and liabilities of the several parties hereto in a certain lot of land, located in the city of Wilmington, New Hanover County, of this State. It is agreed by the parties hereto that the facts upon which the controversy depends may be submitted to the court as in an action without controversy, and judgment may be entered thereon, subject to the right of either party to appeal therefrom to the Supreme Court."

The proceeding proves, on examination, to be two interrogatories submitted to the Court to ascertain its opinion as to what are the respective interests of two persons in a certain lot, without any real litigation, and there is nothing that the judgment of the Court can act upon. Accordingly, the judgment of the court below is merely an opinion, or legal advice, as to the respective rights or interests of the parties in the property. Had the property been sold by order of court for partition, the question now asked us might have been presented upon appeal from the judgment distributing the proceeds, and it might come up in other ways, in a real litigation. But as now presented it is simply a "moot" point, and the Court is asked to give its opinion, as a matter of advice or legal information. The Court is asked to pass its opinion upon an abstract proposition, in a matter in which it cannot adjudge, or direct that the parties themselves, or the officers of the law, shall take any action. This is not a matter of which the courts will take jurisdiction. *McKethan v. Ray,* 71 N. C., 165; *Board of Education v. Kenan,*

112 N. C., 569. It is the function of counsel, not of the courts, to advise parties as to their rights, and answer interrogatories as to the law, as herein propounded.

A case exactly "on all fours" is *Heptinstall v. Newsome,* 146 N. C., 503, in which *Brown, J.,* speaking for a unanimous court, says: "The advisory jurisdiction of courts of equity is primarily confined to trusts and trustees, which includes executors, as far as their rights, powers and duties under the will are concerned," and then, after citing authorities, sums up: "This is not an action brought by the plaintiff against some person claiming an estate or interest in the tract devised to him, but is evidently a proceeding brought in the interest of the several devisees of parcels of land to settle and determine all their respective rights arising under the will *in presenti* and *in futuro* in which the executors, as such, have no interest. The appeal and the action are dismissed."

It would add immensely to the volume of business in the courts if any two or more parties could at will propound interrogatories to the courts as to matters about which they are in doubt. "Submission of a controversy without action" was intended only to dispense with summons and pleadings, where there is a real controversy in which the court can render judgment as in any other action. It was not intended to devolve upon the courts the duty of answering legal questions without any judgment to put the opinion into effect. The two interrogatories submitted to the Court are solely as to what are the respective interests of Mrs. Campbell and Mrs. Cronly in the land, whether each owns one-third or one-half interest therein, and present only a moot point; especially is this so, since the Court holds that they cannot convey it.

Courts decide legal propositions, not as advisory counsel, but only when necessary in determining the relief to be adjudged.