R. D. CHRISTMAN ET AL. v. JESSE HILLIARD ET AL.

(Filed 30 September, 1914.)

1. **Trials—Evidence—Nonsuit—Conflicting Evidence—Plaintiff's Testimony.**
   The rule that the evidence is to be considered in the light most favorable to the plaintiff upon a motion to nonsuit applies to his own testimony when material and conflicting, and also to his and the testimony of the other witnesses, taken as a whole.

2. **Limitations of Actions—Adverse Possession—Evidence—Taxes.**
   A test of adverse possession, in an action involving the title to lands, is whether the acts in evidence are sufficient to expose the occupant to an action of trespass; and while the listing and payment of taxes alone are insufficient, they may become a relevant fact in connection with other circumstances tending to show an adverse and hostile possession.

### 3. Equity—Cloud on Title—Tax Deeds—Interpretation of Statutes.

Revisal, sec. 1589, is highly remedial in its nature and should be construed liberally, and thereunder a suit may be maintained to cancel a tax deed as a cloud upon title to lands, without requiring that the plaintiff must have possession under his paper title as a condition precedent to his right of action.

APPEAL by plaintiffs from *Peebles, J.,* at April Term, 1914, of JOHNSTON.

This action was brought under Revisal, sec. 1589, to determine the adverse claim of defendants to certain land described in the pleadings as adjoining B. D. Hilliard and others and containing 27½ acres and being part of a larger tract containing 100 acres. Plaintiff relied upon adverse possession of seven years under color of title, and also upon adverse possession for twenty years without color, the title being out of the State. R. D. Christman, one of the plaintiffs, testified that he could not state whether the 27½ acres of land was embraced by the description in the deed of Mrs. S. E. Hinnant to Pattie Christman, his wife and coplaintiff, that being one of the deeds introduced by plaintiffs as color of title; but on cross-examination, in response to a question of the defendant's counsel, he testified that it was so embraced by the said description. The court nonsuited plaintiffs, and they appealed.

*R. C. Strong for plaintiffs.*
*Abell & Ward for defendants.*

WALKER, J., after stating the facts: We were told, on the argument before us, that the nonsuit was based on the ground that plaintiffs had not shown that the 27½-acre tract was included in the 100-acre tract. If this be true, the judge evidently erred, for the witness R. D. Christman had the right to change his mind, and it was for the jury to say which of the two statements made by him they would accept. He may have refreshed his memory, or, stimulated by the sharp cross-examination, he may have been awakened to a livelier sense of the truth in regard to the description and the location of the 27½-acre tract. At any rate, he so testified, it may be under the spur of the cross-examination, and the jury must judge of the fact. The conflict in the testimony only affected the credibility of the witness, and did not destroy his testimony. *Ward v. Mfg. Co.,* 123 N. C., 248; *Shell v. Roseman,* 155 N. C., 90. In the case last cited, *Justice Allen* says: "We are not inadvertent to the fact that the plaintiff made a statement on cross-examination as to a material matter, apparently in conflict with his evidence when examined in chief; but this affected his credibility only, and did not justify withdrawing his evidence from the jury."

We cannot say, after reading the record and giving careful heed to the plaintiff's evidence as there stated, that there is none upon which he can recover; for it tends to show, in one view of it, adverse possession for the requisite time under color of title. There is some conflict in the testimony, especially in that of R. D. Christman, as to the nature of the possession of the land and the acts of ownership exercised over it, but we cannot say that there is no evidence of a sufficient possession to ripen the color of title into a good one. We forbear to comment on the evidence further, lest it may prejudice one or the other of the parties at the next trial.

It was not proper for the court to consider only a part of the testimony—that of Mrs. Pattie Christman, for example—but the whole of it, and it should have been construed most favorably to the plaintiffs before a nonsuit could be granted, and if, thus considered, there was any evidence to support their claim, the case should have gone to the jury; and in order to test the legal sufficiency of their proof, they were entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom. *Alexander v. Statesville*, 165 N. C., 527; *Hicks v. Kenan*, 139 N. C., 346; *Britt v. R. R.*, 144 N. C., 243; *Settle v. R. R.*, 150 N. C., 644.

Without commenting upon the evidence, it may be well to reproduce a part of it, which is favorable to the plaintiffs, as to the possession.

R. D. Christman, one of the plaintiffs, testified: "We lived on part of the land, but not all the time; then we went to Wendell and have been renting it since then. We rented to Mr. Crawford some one year, and then we rented it to Wade Andrews, and have continued to rent it since then. My wife's mother, Mrs. S. E. Hinnant, was in possession of the 27½ acres of land before my wife's mother deeded it to my wife. She was in possession as much as ten or fifteen years. I cannot tell exactly how long, but I guess twenty-five years or probably longer. We sold the timber off the 27½ acres of land to C. R. Stott and made a deed for the timber. Of my own knowledge, I do not know of any claim that was made to the 27½ acres of land by any one else, and knew of no acts of ownership by any one else as owner of any part of this land at any time. The home, the yard, stables and barn cover no part of the 27½ acres in controversy. We lived about one-quarter of a mile from the 27½-acre tract, and this 27½-acre tract was all woodland. My wife and I have never exercised any acts of ownership of the 27½ acres of land, except to sell the timber off of it. That is the only thing I recollect, except we offered free wood and lightwood to the public generally. When I was in Dunn I went back there every spring and fall in looking after the rent and going over the crop of the 100-acre tract. The only act of trespass I saw was one, and I told him

that he could not clear there. He said he was going to build. He did not build, and from all the signs from the road I could not tell of other trespass on the land."

C. R. Stott testified that he cut the timber off of the 27½ acres of land in controversy, in the fall or summer of 1909; that he paid the plaintiff for the timber, and that he was something like a month cutting it. "I told Mr. Crawford that I was going to cut the timber; that I had been to Smithfield and found nothing against it; that I had a good deed for it, and that there was no use in our falling out about it, and if it turned out to be his land I would pay him for it; that I would have it measured, and if he paid Crawford for it, he would get his money back out of Christman, if it turned out to be Crawford's land."

Deed from D. W. Adams to Mrs. S. E. Hinnant was put in evidence. It covered the 100 acres.

There was evidence as to the tax sale and deed, which plaintiffs alleged were defective and clouded their title. There was also evidence that Mrs. Hinnant had paid the taxes assessed against the 100 acres.

We think that all of this constituted some evidence from which the jury could find that there had been the requisite adverse possession. Even if it was not cogent proof, it certainly was not open to assault by nonsuit. Upon the question of what is evidence of adverse possession, with special reference to the facts of this case, the following cases may be profitably consulted: *Bryan v. Spivey,* 109 N. C., 57; *Boomer v. Gibbs,* 114 N. C., 76; *Vanderbilt v. Johnson,* 141 N. C., 370; *Simmons v. Box Co.,* 153 N. C., 257; *Ray v. Anders,* 164 N. C., 311; *Dobbins v. Dobbins,* 141 N. C., 210; *Berry v. McPherson,* 153 N. C., 4; *Locklear v. Savage,* 159 N. C., 236; *Coxe v. Carpenter,* 157 N. C., 557. The listing of the land and payment of taxes is a relevant fact, in connection with other circumstances, tending to show a claim of title and an adverse or hostile possession, though not sufficient by itself for the purpose. *Austin v. King,* 97 N. C., 339. A test of adverse possession is the exposure of the occupant to an action of trespass. *Boomer v. Gibbs, supra; Osborne v. Johnson,* 65 N. C., 26. But we think that there was evidence of an adverse holding by the plaintiffs, and those under whom they claim, for the requisite time, however the fact may be as hereafter found by the jury. We do not decide as to the true construction of Revisal, sec. 386, as it is not at present necessary to do so.

The tax deed is not set out in the record, and we do not know its contents; but if fatally defective or void because of failure to comply with essential provisions of the law in making the sale or in the proceedings leading up to the deed, the plaintiffs, under the statute, Revisal, sec. 1589, may have the matter determined in this action, and the same may be said with regard to any other claim set up by defendant. Refer-

ring to a similar law of Nebraska, *Justice Fields,* in *Holland v. Chellen,* 110 U. S., 15, used this language: "Any person claiming title to real estate, whether in or out of possession, may maintain the suit against one who claims an adverse estate in it for the purpose of determining such estate and quieting his title. It is certainly for the interest of the State that this jurisdiction of the court should be maintained and that causes of apprehended litigation respecting real property necessarily affecting its use and enjoyment should be removed; for so long as they remain they will prevent improvement and consequent benefit to the public. It is a matter of everyday observation that many lots of land in our cities remain unimproved because of conflicting claims to them. It is manifestly to the interest of the community that conflicting claims to property thus situated should be settled so that it may be subject to use and improvement. To meet cases of this character, statutes like the one in Nebraska have been passed by several States, and they accomplish a most useful purpose." See, also, *Campbell v. Cronly,* 150 N. C., 457.

The statute has been said to be an extension of the remedy in equity theretofore existing for the removal of clouds on title, and is intended to afford an easy and expeditious mode of determining all conflicting claims to land, whether denied from a common source or from different and independent sources. It is highly remedial and beneficial in its nature, and should, therefore, be construed liberally. It is also a statute of repose, and also, for that reason, is entitled to favorable consideration. *Adler v. Sullivan,* 115 Ala., 582; *Walton v. Perkins,* 33 Minn., 357; *Holmes v. Chester,* 26 N. J. Eq., 81. It deprives the defendant of no right, but affords him every opportunity of defending the validity of his title; but in the interest of peace and the settlement of controversies, it allows his adversary to put it to the test of early judicial investigation, and does not compel plaintiff to wait on his pleasure as to the time when the inquiry shall be made, and thus give defendant an unfair advantage over him. *Jersey City v. Lembeck,* 31 N. J. Eq., 255. The plaintiff is not required to have possession as a condition precedent to his right of action, nor will the apparent invalidity of defendant's title deprive him of the statutory remedy. *Daniels v. Fowler,* 120 N. C., 14; *Rumbo v. Mfg. Co.,* 129 N. C., 9; *Beck v. Meroney,* 135 N. C., 532; *Campbell v. Cronly, supra.* The beneficial purpose of the statute is to free the land of the cloud resting upon it, and make its title clear and indisputable, so that it may enter the channels of commerce and trade unfettered and without the handicap of suspicion, instead of remaining idle and unremunerative. This case is within its letter and spirit, and plaintiff has a right to the relief he seeks, if he can make good his allegations.

The nonsuit was granted on plaintiffs' testimony, and defendant's evidence has not been heard. It may materially change the aspect of the case, or, on plaintiffs' own showing, the jury may draw an inference adverse to them, as it is their province to find the facts.

The nonsuit will be set aside, and a new trial granted.

New trial.