N. C. NEWBERN v. J. W. FISHER.

(Filed 26 February, 1930.)

**Frauds, Statute of A a—In this case held: promise to save surety on note harmless was original agreement not falling within provisions of statute.**

Where in order to provide a line of credit at the bank for his son the father, without his son's knowledge, and before the transactions, promised another that he would save him harmless if he would endorse his son's notes, and thereafter the promisee signs the son's notes as surety and is required to pay them: *Held*, the promise was an original agreement and

does not fall within the provisions of the Statute of Frauds, and is enforceable by the promisee though not in writing nor signed as the statute requires. C. S., 987. The conflict between the courts on the matter of original and collateral promises discussed by MR. CHIEF JUSTICE STACY.

APPEAL by plaintiff from *Sinclair, J.,* at September Term, 1929, of CURRITUCK.

Civil action *ex contractu* for money paid.

The evidence discloses that the plaintiff endorsed certain notes executed by I. W. Fisher to the First and Citizens National Bank of Elizabeth City, N. C., at the instance of the defendant, who orally agreed to be responsible therefor and to protect the plaintiff from loss, in case he should have to pay any of said notes; that the purpose of the defendant was to enable his son, I. W. Fisher, to obtain a line of credit at the bank, up to $4,000, for use in carrying on his business; that the agreement between plaintiff and defendant was made solely at the solicitation of the defendant, without the consent of his son who knew nothing of the understanding, and before any notes were endorsed by the plaintiff; and that plaintiff has been required to pay said notes, aggregating $3,870, by reason of his endorsement.

The court being of opinion that the agreement in question was void under the statute of frauds, and, therefore, unenforceable under the defendant's plea, directed a verdict for the defendant and entered judgment accordingly, from which the plaintiff appeals, assigning errors.

*Aydlett & Simpson for plaintiff.*
*Ehringhaus & Hall and Thompson & Wilson for defendant.*

STACY, C. J., after stating the case: Is a special promise by one, not a party to a note, to save another harmless if he will become surety thereon, an undertaking to answer the debt, default or miscarriage of another within the meaning of the statute of frauds? The question is not new. It is old and vexatious. The decisions are hopelessly in conflict. Notes 1 A. L. R., 383, and 6 Ann. Cas., 671; 25 R. C. L., 524; 25 C. J., 155.

The only uniformity found among the decisions relates to a matter of terminology. The "special promise," mentioned in the statute, is regarded as meaning an express promise, and contracts held to be outside the statute, and, therefore, unaffected by it, are usually termed "original" or "independent," while those which 'fall within its provisions are spoken of as "collateral." But no universal test of difference between an original undertaking and a collateral one has been established by the decisions. The distinction which separates these two classes of contracts is what has kept the courts in constant division. It is a diffi-

cult question, and the cue to its solution is not easy to find. *Resseter v. Waterman,* 151 Ill., 169.

According to the prevailing view, however, such a promise as we are now considering is held to be an original and not a collateral agreement, and, therefore, not within that section of the statute of frauds which provides that no action shall be brought on any special promise to answer the debt, default or miscarriage of another, unless said agreement, or some memorandum or note thereof, shall be in writing and signed by the party charged therewith or some other person thereunto by him lawfully authorized. C. S., 987; Browne on the Statute of Frauds (5 ed.), p. 197; Reed on the Statute of Frauds, Vol. I, p. 235; *Jones v. Bacon,* 145 N. Y., 446, 40 N. E., 216; *Reed v. Holcomb,* 31 Conn., 360; *Mills v. Brown,* 11 Iowa, 314; *Resseter v. Waterman,* 151 Ill., 169; *Keesling v. Frazier,* 119 Ind., 185; *Hawes v. Murphy,* 191 Mass., 469; *Noyes v. Ostrom,* 113 Minn., 111; *Alphin v. Lowman,* 115 Va., 441. At least, such is the holding in a majority of the cases where the surety acts solely upon the promise. *Demeritt v. Bickford,* 58 N. H., 223; *Vogel v. Melm,* 31 Wis., 306.

The reasons assigned by the courts for this conclusion are not always the same. Some point out, *arguendo,* that the promise is to the debtor and not to the creditor; others, that the promise is the main inducement to the risk, even if the principal obligor be also bound, expressly or by implication of law; still others, that the action in favor of the surety against the principal obligor needs must rest upon an assumpsit, raised by a subsequent fact, to wit, the payment of the debt, which tends to negative the existence of a contract between him and the surety at the time the obligation was signed; and *a fortiori* if the promise preceded the signing, as in the instant case; while others are apparently influenced by the inherent equity of the particular case, rather than by any connected chain of reasoning. *Macey v. Childress,* 2 Tenn. Ch., 438. In *Wildes v. Dudlow,* 23 W. R., 435, Id., 2 C. L. J., 317, *Malins, V. C.,* said it was "plain upon principle" that a promise to indemnify is not within the statute, and let it go at that. See, also, above citations of both Browne on the Statute of Frauds and Reed on the Statute of Frauds.

On the other hand, the courts taking the opposite view, eschew the nice refinements and diverse reasoning of the majority, and place their decisions on the strict letter of the statute. *Posten v. Clem,* 201 Ala., 529; *Craft v. Lott,* 87 Miss., 590; *Gansey v. Orr,* 173 Mo., 532; *Hartley v. Sandford,* 66 N. J. L., 627; *Nugent v. Wolfe,* 111 Pa., 471. In contrast to the position of *Vice-Chancellor Malins* in *Wildes v. Dudlow, supra,* above stated, and for which he was content to give no reason, *Cooper, J.,* in *May v. Williams,* 61 Miss., 125, thought it was equally

plain upon principle that a promise to indemnify one who becomes surety for another at the request of the promisor is within the Statute of Frauds and unenforceable, unless evidenced by writing. To like effect, is the opinion of *Dixon, J.*, in *Hartley v. Sandford, supra.*

The English courts have vacillated on the subject, and, to a large extent, the American courts have vacillated with them. See valuable opinion of *Elliott, J.*, in *Anderson v. Spence,* 72 Ind., 315, 37 Am. Rep., 162.

The assumption of responsibility on the part of the promisee would seem to be a sufficient consideration to support the contract. *Jones v. Bacon, supra.*

Because of the decisions in *Draughan v. Bunting,* 31 N. C., 10, *Stanley v. Hendricks,* 35 N. C., 87, and *Combs v. Harshaw,* 63 N. C., 198, North Carolina has been classified with the minority on this subject. But a careful examination of these cases will disclose that in each the defendant or promisor had "an axe to grind." In the first he was already surety on the note to be signed, and his promise was, therefore, in a sense as to the promisee, a superadded agreement to answer for his own subsisting liability. *Hartley v. Sandford, supra.* In the second he was interested in removing a tenant from his house, to whom he was indebted, and the promise was made to the creditor. In the third the promise was likewise direct to the creditor. Unless these decisions can be thus distinguished, they are in conflict with the great weight of authority.

Cases like *Jennings v. Keel,* 196 N. C., 675, 146 S. E., 716; *Dale v. Lumber Co.,* 152 N. C., 651, 68 S. E., 134, and *Whitehurst v. Hyman,* 90 N. C., 489, are not decisive of the question here presented, as they were made to rest upon another principle.

We are of opinion that the decisions of the majority, as above pointed out, are accordant with sound principles, and while the position of the minority may be less difficult to maintain, we are disposed to cast our lot with the majority and undertake to work out the rights of the parties as they may arise in each case.

It is true, that, in the instant case, the plaintiff, on cross-examination, gave evidence tending to show a collateral agreement and not an original one, but this contradiction in his testimony would not take the case from the jury. *Moore v. Ins. Co.,* 193 N. C., 538, 137 S. E., 580; *Christman v. Hilliard,* 167 N. C., 4, 82 S. E., 949; *Shell v. Roseman,* 155 N. C., 90, 71 S. E., 86.

It follows, therefore, from what is said above, that, upon the facts appearing on the present record, there was error in directing a verdict for the defendant.

New trial.