MARY LEE HEATH AND SON, KENNETH LEE HEATH v. T. J. TURNER AND
WIFE, EVELYN TURNER; GRAHAM TURNER AND WIFE, FRANCES
TURNER; LLOYD KENNEDY AND WIFE, LOIS KENNEDY

No. 561A82

(Filed 3 November 1983)

### 1. Quieting Title § 2.2— burden of proof

In an action to quiet title, the burden of proof is on the plaintiff to
establish his title, and he may do so by traditional methods or by reliance on
the Real Property Marketable Title Act.

### 2. Deeds § 11.3— quitclaim deed—interest conveyed

A quitclaim deed conveys only the interest of the grantor, whatever it is,
no more and no less.

### 3. Adverse Possession § 10— adverse possession against remainderman

Defendants could not possess the property in question adversely to a re-
mainderman or his grantees during the lifetime of the life tenant, since the
statute of limitations conferring title by adverse possession does not begin to
run against one who has no present right of possession to the property.

### 4. Quieting Title § 2.2; Trespass to Try Title § 2— Real Property Marketable Ti-
tle Act—effect of possession

The fact that defendants were in possession of the lands in question
serves as a defense against a competing marketable record title but does not,
under the Real Property Marketable Title Act, establish title in defendants.
Therefore, whatever rights the defendants have because they are in posses-
sion of the lands are not taken away by a competing marketable record title,
but the mere fact of possession by the defendants does not alone establish
their ownership of the lands and only protects what ownership the defendants
already have on the date that marketability is to be determined.

### 5. Quieting Title § 2.2; Trespass to Try Title § 4— Real Property Marketable Ti-
tle Act—effect of possession

Where defendants had acquired title to an 8/11 undivided interest in the
lands in question by adverse possession when an action to quiet title was com-
menced, their possession of the lands at the time of commencement of the
lawsuit protects, as against a competing marketable title, both their "interest"
and "estate" in the lands, that is, the 8/11 undivided interest and their "right"
to possession of the property, but possession does not give defendants any ti-
tle which they did not already have. G.S. 47B-3(3).

### 6. Quieting Title § 2.2; Trespass to Try Title § 2— Real Property Marketable Ti-
tle Act—beginning of 30-year period defined

In exception (10) under G.S. 47B-3 which preserves from extinction rights,
estates, interests, claims or charges created subsequent to the beginning of
the 30-year period for establishing marketable record title, the "beginning of
such 30-year period" is the date of the title transaction purporting to create

the interest relied upon as the basis for the marketability of title and which was the most recent title transaction as of a date 30 years prior to the time when marketability is to be determined.

### 7. Quieting Title § 2.2; Trespass to Try Title § 2— Real Property Marketable Title Act—competing title created by transaction recorded after beginning of 30-year period

Even though a party establishes a marketable record title to the property in question, under G.S. 47B-3(10) it cannot extinguish a competing independent title if that competing title is created by a title transaction recorded after the beginning date for the establishment of the marketable record title. Therefore, defendants who claimed a record title to the lands in question under a deed recorded in 1932 would have a marketable record title within the meaning of the Real Property Marketable Title Act 30 years later in 1962, but their marketable record title would not affect or extinguish the title of plaintiffs to a 3/11 interest in the lands acquired by and through deeds to them and their predecessors recorded in 1943, 1955 and 1974.

APPEAL by plaintiffs from a decision of the Court of Appeals, 58 N.C. App. 708, 294 S.E. 2d 392 (1982), reversing a judgment of *Cowper, Judge,* entered at the 12 January 1981 Special Session of the Superior Court, DUPLIN County.

*Fred W. Harrison, Attorney for plaintiff-appellants.*

*Russell J. Lanier, Jr., Attorney for defendant-appellees (Kennedys).*

*Vance B. Gavin, Attorney for defendant-appellees (Turners).*

FRYE, Justice.

This action involves the title to real property. The plaintiffs in this action alleged that they owned Lots 2 through 7 in the division of the Margaret Hall land, that the defendants were trespassing on their land, and that the defendants' claims constituted a cloud on the plaintiffs' title. The defendants filed answers denying the plaintiffs' title, asserting title in themselves alternatively by record title, adverse possession for twenty years, and adverse possession for seven years under color of title. Amended answers were filed alleging that the defendants and their predecessors in title had been vested with an estate in the lands therein described for thirty or more years with nothing appearing of record purporting to divest their interests, that no notice had been filed by the plaintiffs as by law prescribed and that the defendants are entitled to be declared the owners of a

Heath v. Turner

marketable record title in the property. The case was tried by the court without a jury.

Margaret Hall died intestate in Duplin County, North Carolina, on 1 December 1916 owning a tract of land containing 50 acres, more or less. She was survived by her husband, Thomas Hall,[1] and by eleven children. Subsequently, five of the children each received properly executed and recorded division deeds to one lot, thus effecting a division as to Lots 1, 8, 9, 10 and 11 of the Margaret Hall lands. No division deeds were recorded for Lots 2, 3, 4, 5, 6 or 7 to any of the other six children. Nevertheless, three of the remaining six children executed deeds purporting to convey all of Lots 2, 6 and 7 to B. F. Hobgood, Sr., husband of one of the children, Lillie Hall Hobgood. These deeds were duly recorded. Also, by duly recorded deeds, two of the remaining three children each conveyed their 1/11 undivided interest in the remaining Margaret Hall lands to their sister, Lillie Hall Hobgood. Lillie Hall Hobgood never conveyed her interests in the lands of Margaret Hall, except as contained in the division deeds to Lots 1, 8, 9, 10 and 11.

Lillie Hall Hobgood died intestate on 4 July 1929, survived by her husband, B. F. Hobgood, Sr. and one child, B. F. Hobgood, Jr.

B. F. Hobgood, Sr., by deed recorded on 4 November 1932, purported to convey to J. A. Thigpen Lots 2, 3, 4, 5, 6 and 7 of the Margaret Hall lands. This warranty deed, regular in form, purported to convey a fee simple estate in the lands therein conveyed. By subsequent title transactions, including deeds recorded in 1942 and 1945, the property was conveyed to the defendants.

B. F. Hobgood, Jr., by quitclaim deed recorded 8 December 1943, conveyed to A. L. Mercer all of his right, title and interest in Lots 2, 3, 4, 5, 6 and 7 of the Margaret Hall lands. A. L. Mercer, by quitclaim deed recorded in 1955, conveyed his interest in the property to Ella Rose Mercer and Grady Mercer, Jr., who then conveyed their interest by quitclaim deed recorded in 1974 to the plaintiffs.

---

1. Under existing law at that time, a surviving husband was not an heir as to real property. At most, her surviving husband acquired a curtesy estate which expired at the time of his death on 31 March 1930.

B. F. Hobgood, Sr. died on 20 August 1976. This action was commenced on 15 August 1978. The plaintiffs, as successor-grantees, base their claim to title on the deed from B. F. Hobgood, Jr. to A. L. Mercer in 1943. The defendants, successor-grantees under the deed from B. F. Hobgood, Sr. to J. A. Thigpen in 1932, claim title under the Real Property Marketable Title Act, G.S. §§ 47B-1 through 47B-9, and by adverse possession. The case was heard by Judge Albert W. Cowper at the 12 January 1981 Special Session of the Duplin County Superior Court, without a jury. Judge Cowper made extensive findings of fact, concluding as follows:

1. That the defects, if any, in the Deed from Lamb H. Hall to Lillie Hall Hobgood (recorded in the Duplin County Registry in Book 190 at Page 81) were cured by G.S. 47-49.

2. That the defendants in the proportion of their several interests are the owners of Lots 2, 6 and 7 hereinabove referred to and delineated on the map of Martin L. Barrow, Jr. (Plaintiffs' Exhibit No. 1) by reason of the defendants' actual, open, hostile and notorious possession of the same under known and visible lines and boundaries for more than thirty years and by color of title for more than seven years and prima facie by reason of the Title Marketability Act of North Carolina, as is hereinabove set out.

3. (That the Plaintiffs are the owners of a 3/11 undivided interest in the lands designated as Lots 3, 4 and 5 on Plaintiffs' Exhibit No. 1) and have failed to show title to any other lands.

4. That the defendants in the proportion of their several interests and their predecessors in title are the owners of an 8/11 undivided interest in the lots designated as 3, 4, and 5 on the map of Martin L. Barrow, Jr. (Plaintiffs['] Exhibit No. 1) by reason of their actual, open, hostile and notorious possession of the same under known and visible lines and boundaries for more than thirty years and by color of title for more than seven years and prima facie by reason of the Title Marketability Act of North Carolina, as is above more specifically set out.

5. That the defendants . . . through their predecessors in title . . . acquired the curtesy interest of B. F. Hobgood,

Sr. and were in lawful possession. That the said B. F. Hobgood, Sr. took a curtesy interest in his wife's lands upon her death on July 4, 1929; and the said curtesy interest expired on the date of his death on August 20, 1976. That the Statutes of Limitations (whether seven years, twenty years or thirty years) began to run on the date of August 20, 1976; and said Statutes are no bar to plaintiffs' action.

Judge Cowper then entered judgment in favor of the plaintiffs, Mary Lee Heath and son, Kenneth Lee Heath, declaring them to be the owners of a 3/11 undivided interest in Lots 3, 4 and 5 and that the remaining 8/11 undivided interests in said lots were owned by the defendants, together with the entire interest in Lots 2, 6 and 7.

Both plaintiffs and defendants appealed to the Court of Appeals where a divided panel reversed and remanded, holding that under the Real Property Marketable Title Act the defendants were the owners of the entire interests in all of the lots. From that decision, plaintiffs appealed to this Court as a matter of right pursuant to G.S. § 7A-30(2).

The essential question in this case is whether the plaintiffs, successor-grantees from a remainderman, can recover the property in question from the defendants who have been in possession of the property for over thirty years. Stated differently, the question is whether the defendants, in possession under a deed conveying a life estate but purporting to convey a fee, actually acquired a fee simple estate in the land thus destroying the vested remainder of the plaintiffs during the lifetime of the life tenant.

The Court of Appeals held that the defendants' title must prevail because the defendants were in possession of the property and because the plaintiffs' vested remainder was divested by G.S. § 47B-2(c) which provides that a "marketable record title" shall be clear of "all rights . . . the existence of which depends upon any . . . title transaction . . . that occurred prior to such 30-year period." For the reasons indicated herein, we reverse the Court of Appeals and affirm the holding of the trial court that the plaintiffs own a 3/11 interest in Lots 3, 4 and 5 with all other interests being owned by the defendants.

The plaintiffs do not contest the trial court's finding, upheld by the Court of Appeals, that the defendants are the owners in fee of the entire interest in Lots 2, 6 and 7 of the Margaret Hall lands. Plaintiffs do contend, however, that the trial court erred in limiting their interest in Lots 3, 4 and 5 to a 3/11 undivided interest. The defendants contend that the trial court erred in concluding that the plaintiffs held any interest in Lots 3, 4 and 5. We now consider the plaintiffs' claim of title to Lots 3, 4 and 5.

[1] Before examining the plaintiffs' claim, however, we note that this is an action to quiet title which is controlled by Section 41-10 of the General Statutes of North Carolina. This is a remedial statute and is to be liberally construed to advance the remedy and permit the courts to bring the parties to an issue. *Trust Co. v. Miller*, 243 N.C. 1, 5, 89 S.E. 2d 765, 768-69 (1955). The beneficial purpose of this section is to free the land of the cloud resting upon it and make its title clear and indisputable, so that it may enter the channels of commerce and trade unfettered and without the handicap of suspicion. *Christman v. Hilliard*, 167 N.C. 4, 8, 82 S.E. 949, 951 (1914). In an action to quiet title, the burden of proof is on the plaintiff to establish his title. *Walker v. Story*, 253 N.C. 59, 60, 116 S.E. 2d 147, 148 (1960). He may do so by traditional methods or by reliance on the Real Property Marketable Title Act.

The Real Property Marketable Title Act was enacted by the General Assembly of North Carolina in an effort to expedite the alienation and marketability of real property. Note, *North Carolina Marketable Title Act—Section 47B-2(D)—Proof of Title —Relief at Last for the Plaintiff Insituting Land Actions*, 10 W.F.L. Rev. 312 (1974). Section 47B-2 of the act provides as follows:

(a) Any person having the legal capacity to own real property in this State, who, alone or together with his predecessors in title, shall have been vested with any estate in real property of record for 30 years or more, shall have a *marketable record title* to such estate in real property.

. . . .

(d) In every action for the recovery of real property, to quiet title, or to recover damages for trespass, the establish-

ment of a marketable record title in any person pursuant to this statute shall be *prima facie evidence that such person owns title* to the real property described in his record chain of title.

(Emphases added.)

Other relevant sections of the Real Property Marketable Title Act will be referred to later in this opinion.

The leading case in North Carolina setting out the traditional methods of proving title is *Mobley v. Griffin*, 104 N.C. 112, 10 S.E. 142 (1889). As stated therein:

This *prima facie* showing of title may be made by either of several methods. [Citations omitted.]

1. He may offer a connected chain of title or a grant direct from the State to himself.

2. Without exhibiting any grant from the State, he may show open, notorious, continuous, adverse and unequivocal possession of the land in controversy, under color of title in himself and those under whom he claims, for twenty-one years before the action was brought. [Citations omitted.]

3. He may show title out of the State by offering a grant to a stranger, without connecting himself with it, and then offer proof of open, notorious, continuous adverse possession, under color of title in himself and those under whom he claims, for seven years before the action was brought. [Citations omitted.]

4. He may show, as against the State, possession under known and visible boundaries for thirty years, or as against individuals for twenty years before the action was brought. [Citations omitted.]

5. He can provide title by estoppel, as by showing that the defendant was his tenant, or derived his title through his tenant, when the action was brought. [Citations omitted.]

6. He may connect the defendant with a common source of title and show in himself a better title from that source. [Citations omitted.]

*Mobley*, 104 N.C. at 115, 10 S.E. at 142-43.

We note that the plaintiffs, in the case before us, did not base their claim to title on the Real Property Marketable Title Act. Rather, they relied on a traditional method of proving title, by connecting themselves, through a series of title transactions, to a common source (Margaret Hall), and then showing a better title in themselves from that source. By this method the plaintiffs were able to establish title in themselves to a 3/11 undivided interest in Lots 3, 4 and 5 but they were unable to establish title by this method to any greater interest in Lots 3, 4 and 5 or to *any* interest in Lots 2, 6 and 7.

The trial court made the following findings of fact to which there was no exception:

That Lillie Hall Hobgood has no prior record title to any interest in the lands designated on said plat as Lots 3, 4 and 5 except:

a. By virtue of a Deed recorded in Book 190 at Page 81 of the Duplin County Registry. Dated July 10, 1917. From Lamb H. Hall to Lillie Hall for a 1/11 interest in the Margaret Hall Lands.

b. Deed from James W. Stanley and wife, Sarah Stanley, to Lillie S. Hall. Dated December 10, 1917. Filed January 20, 1919. Recorded in Book 200 at Page 196 of the Duplin County Registry. A 1/11 interest.

That the aforesaid Lillie Hall Hobgood (wife of B. F. Hobgood, Sr.; mother of B. F. Hobgood, Jr., and daughter of Margaret Hall) inherited a 1/11 interest in the lands of Margaret Hall, who died intestate. Lillie Hall Hobgood thereby owned a total of 3/11 undivided interest in said lands.

[2] The plaintiffs acquired their title through successive grantees of B. F. Hobgood, Jr., who could only convey to the plaintiffs' predecessors the interest acquired by descent from his mother, Lillie Hall Hobgood, who died intestate in 1929. The trial court found that Lillie Hall Hobgood owned a 3/11 undivided interest in Lots 3, 4 and 5. Since the plaintiffs claim title through and by a quitclaim deed from B. F. Hobgood, Jr. conveying all of his right, title and interest in the property, it must necessarily follow that the interest conveyed could not exceed the interest of Hobgood, Jr.'s mother, that is, a 3/11 undivided interest in the lots in

question. A quitclaim deed conveys only the interest of the grant-or, whatever it is, no more and no less. *Hayes v. Ricard*, 245 N.C. 687, 691, 97 S.E. 2d 105, 108 (1952). We also note that each of the deeds in the plaintiffs' chain subsequent to the B. F. Hobgood, Jr. deed is also a quitclaim deed, again conveying all of the grantors' right, title and interest in the property. We find no error, there-fore, in the trial court's ruling that the plaintiffs are the owners of only a 3/11 undivided interest in Lots 3, 4 and 5.

[3] We turn now to the defendants' claims that they are entitled to all of the interests in Lots 3, 4 and 5. The defendants claim ti-tle to the property in question by virtue of the Real Property Marketable Title Act. G.S. §§ 47B-1 through 47B-9. They could not acquire title to the 3/11 undivided interest of B. F. Hobgood, Jr. in those lots by adverse possession, either under the twenty-year statutes of limitations, G.S. §§ 1-39 and 1-40, or by adverse posses-sion under color of title for seven years, G.S. § 1-38, since it is clear that they could not possess the property adversely to the remainderman or his grantees during the lifetime of B. F. Hob-good, Sr., the life tenant. This is so under the well established rule that the statute of limitations conferring title by adverse possession does not begin to run against one who has no present right of possession to the land involved. *See generally* P. Hedrick, *Webster's Real Estate Law in North Carolina*, § 302 (rev. ed. 1981).

In enacting the Real Property Marketable Title Act, the General Assembly stated its purpose as follows:

> It is the purpose of the General Assembly of the State of North Carolina to provide that if a person claims title to real property under a chain of record title for 30 years, and no other person has filed a notice of any claim of interest in the real property during the 30-year period, then all conflicting claims based upon any title transaction prior to the 30-year period shall be extinguished.

G.S. § 47B-1 (Cum. Supp. 1981).

As it relates to the 3/11 undivided interest in Lots 3, 4 and 5 of the Margaret Hall lands, it appears, as the majority of the panel of the Court of Appeals noted, that both the plaintiffs and the defendants have record titles of more than thirty years' dura-

tion which could be examined without finding an exception, the defendants' title commencing in 1932 and the plaintiffs' title com̱mencing in 1943.[2] Because the defendants had been in possession of the property for over thirty years, and because the panel treated the plaintiffs' reliance on Hobgood, Jr.'s inheritance from his mother as predating the defendants' 1932 deed, the Court of Appeals held that the 3/11 interest of the plaintiffs was divested by virtue of G.S. § 47B-2(c). This was error. This section makes marketable record title, by its terms, *subject to the matters stated in G.S. § 47B-3*, which provides in pertinent part as follows:

§ 47B-3. Exceptions.

Such marketable record title shall not affect or extinguish the following rights:

. . . .

(3) Rights, estates, interests, claims or charges of any person who is in present, actual and open possession of the real property so long as such person is in such possession.

. . . .

(10) Rights, estates, interests, claims or charges created subsequent to the beginning of such 30-year period.

Following the language of the statute, the marketable record title (*prima facie* evidence of ownership) of the plaintiffs does not affect or extinguish the rights, estates, interests, claims or charges of the defendants who are admittedly in present, actual and open possession of the property. G.S. § 47B-3(3). The market-

---

2. We may assume, without deciding, that both the plaintiffs and the defendants have "marketable record title," that is, "the public records disclose a title transaction affecting the title to the real property which has been of record for not less than 30 years purporting to create such estate" in the person from whom, by one or more title transactions, such estate has passed "with nothing appearing of record, in either case, purporting to divest such claimant of the estate claimed." G.S. § 47B-2(a) and (b). Pursuant to G.S. § 47B-2(d), the establishment of the "marketable record title" in this lawsuit would be "prima facie evidence that such person owns title to the real property described in his record chain of title." On its face then, the record would show marketable record title to the 3/11 undivided interest in Lots 3, 4 and 5 in both the plaintiffs and the defendants, *prima facie* evidence that both parties own the property.

able record title (*prima facie* evidence of ownership) of the defendants does not affect or extinguish the rights, estates, interests, claims or charges (of the plaintiffs or anyone else) created subsequent to the beginning of such 30-year period. G.S. § 47B-3(10). The exceptions listed under G.S. § 47B-3 do not serve as a sword to establish title in the party claiming a marketable title under the Act but instead serve as a shield to protect from extinguishment the rights therein excepted. Nor does the enumeration of the exceptions determine the priority of one exception over the other.

[4]    Applying this provision to the instant case, the fact that the defendants were in possession of the lands in question serves as a defense against a competing marketable record title but does not, under the Marketable Title Act, establish title in the defendants. Stated differently, whatever rights the defendants have because they are in possession of the property are not taken away by a competing marketable record title but the mere fact of possession by the defendants does not alone establish their ownership of the land. It (possession) only protects whatever ownership the defendants already have on the date that marketability is to be determined.

[5]    When this action was filed on 15 August 1978, the defendants had acquired title to an 8/11 undivided interest in Lots 3, 4 and 5 by adverse possession. Since the defendants owned an undivided interest in Lots 3, 4 and 5, their possession of the property on the date that marketability is to be determined (15 August 1978), protects their rights as owners of the 8/11 undivided interest. Thus, even if the plaintiffs had a marketable record title on that date under the Real Property Marketable Title Act, it could not affect or extinguish the defendants' title previously acquired by adverse possession because that title is an interest protected by G.S. § 47B-3(3). Possession by the defendants on the crucial date would not give the defendants title as to the plaintiffs' 3/11 undivided interest in the property, but their right to possession of the property as cotenants, prior to partition or sale, would be protected. This is true under the general rule that each cotenant has the right to enter upon the land and to enjoy it jointly with the other cotenants. *See generally* P. Hedrick, *Webster's Real Estate Law in North Carolina* § 115 (rev. ed. 1981). Thus, the defendants' possession of the property at the time of commencement of the

lawsuit protects, as against a competing marketable title, both their "interest" or "estate" in the property, that is, the 8/11 undivided interest and their "right" to possession of the property but does not give them any title which they did not already have.

[6] We return to exception (10) under G.S. § 47B-3 which preserves from extinction rights, estates, interests, claims or charges created subsequent to the beginning of such 30-year period. The "beginning of such 30-year period" is the date of the title transaction purporting to create the interest claimed by the defendants upon which they rely as the basis for the marketability of their title and which was the most recent title transaction as of a date thirty years prior to the time when marketability is to be determined. *See* Basye, *Clearing Land Titles*, § 174, p. 381 (2d ed. 1970). If it be assumed that defendants jointly claim their record title from B. F. Hobgood, Sr.'s warranty deed recorded 4 November 1932, this date would constitute the "beginning of such 30-year period" for the purpose of establishing the marketable record title of defendants. Plaintiffs' claim is based on the deed from B. F. Hobgood, Jr. to A. L. Mercer which was recorded on 8 December 1943, conveying all of his right, title and interest in the property.[3] Did this deed create in the grantee, Mercer, any rights, estates, interests or claims subsequent to the beginning of such 30-year period within the meaning of G.S. § 47B-3(10)? Clearly, the vested remainder is a right, estate, interest *and* claim. It is also clear that the deed created the vested remainder in the grantee subsequent to 4 November 1932. Accordingly, the B. F. Hobgood, Jr. deed, recorded 11 years after the B. F. Hobgood, Sr. deed, created in Mercer a vested remainder in fee subject to Hobgood, Sr.'s curtesy rights. This vested remainder, "created subsequent to the beginning of such 30-year period," by the clear language of G.S. § 47B-3, was not affected or extinguished by the marketable record title of defendants.

Since the plaintiffs' interest created by the B. F. Hobgood, Jr. deed is only to a 3/11 undivided interest, the defendants' marketable record title to the remaining 8/11 undivided interest in the lands in question is not affected.

---

3. On that date Hobgood, Jr. owned a vested remainder in a 3/11 undivided interest in Lots 3, 4 and 5.

Section 47B-3(10) of the North Carolina Real Property Marketable Title Act is similar, though not identical to section 2(d) of the Model Marketable Title Act.[4] The Model Act provides in pertinent part as follows:

> . . . .

> Section 2. *Matters to Which Marketable Title is Subject.* Such marketable record title shall be subject to:

> . . . .

> (d) Any interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title of record is started; *provided,* however, that such recording shall not revive or give validity to any interest which has been extinguished prior to the time of the recording by the operation of Section 3 hereof.

> . . . .

> Section 3. *Interests Extinguished by Marketable Title.* Subject to the matters stated in Section 2 hereof, such marketable record title shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims or charges whatsoever, the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title
> . . . .

Basye, *Clearing Land Titles,* § 174 (2d ed. 1970).

In the comment to section 2(d) of the Model Act,[5] the following example appears:

> Clause (d) deals with the question: What is the effect of instruments being recorded during the forty-year [30-year

---

4. For full text, and analysis of the Model Marketable Title Act, see Basye, *Clearing Land Titles* § 174 (2d ed. 1970).

5. Neither section 2(d) of the Model Act or § 47B-3(10) of the North Carolina Real Property Marketable Title Act were included in the Proposed Marketable Title Act for the State of North Carolina. *See* Webster, *The Quest for Clear Land Titles—Making Land Title Searches Shorter and Surer in North Carolina via Marketable Title Legislation,* 44 N.C.L. Rev. 89, 103-126 (1965).

NC] period after the effective date of the root of title, which are a part of or constitute an independent chain of title? Suppose a deed conveying land from A to B in fee simple is recorded in 1912. A second deed conveying the same land from B to C in fee simple is recorded in 1925. In 1915, a deed conveying the same land from X to Y in fee simple is recorded. In 1955, Y may be said to have a marketable record title under the statute, since 40 years has elapsed after the effective date of his root of title, 1915. And the 1925 conveyance from B to C cannot be said to purport to divest Y, since it is an entirely independent chain of title. Nevertheless, by the terms of this clause, Y takes subject to the interest of C arising from the deed recorded in 1925. It will be noted, therefore, that the recording of C's deed in 1925 operated in much the same way as if he had filed a notice, and prevented Y from wiping out C's title in 1955 . . . .

Simes and Taylor, *Improvement of Conveyancing by Legislation*, 13-14 (1960).

[7]  Subsection (10) of G.S. § 47B-3 operates in much the same manner as in the example cited in the comment to section 2(d) of the Model Act. Even though a party establishes a marketable record title to the property in question, it cannot extinguish a competing independent title if that competing title is created by a title transaction recorded after the beginning date for the establishment of the marketable record title. Applying the rule to the instant case, the defendants, if claiming a record title under a deed recorded in 1932, would have a marketable record title within the meaning of the Real Property Marketable Title Act, 30 years later in 1962. However, their marketable record title would be subject to (would not affect or extinguish) the title (the rights, estates, etc.) of the plaintiffs acquired (created) by and through the deeds to them and their predecessors recorded in 1943, 1955 and 1974.

Although the majority opinion in the Court of Appeals noted that the defendants had a record title commencing with the deed from B. F. Hobgood, Sr. to J. A. Thigpen in 1932, we note that in their amended answers and in their offer of proof at trial, the defendants claimed marketable record title only from deeds recorded in 1942 and 1945. The 1942 deed would ripen into

Heath v. Turner

marketable record title in 1972, but the marketable record title would not affect or extinguish rights or interests of the plaintiffs created by the deeds to them and their predecessors recorded in 1943, 1955 and 1974. The 1945 deed would, of course, ripen into marketable record title in 1975, but this marketable record title would not extinguish rights of the plaintiffs acquired under the deeds to them and their predecessors recorded in 1955 and 1974. Thus, whether the defendants use the 1932 deed or the 1942 or 1945 deeds as their root of title, the result is the same. Their marketable record title cannot "affect or extinguish . . . [r]ights, estates, interests, claims or charges created subsequent to the beginning of such 30-year period." G.S. § 47B-3(10). The defendants' marketable record title in fee simple is *prima facie* evidence of ownership of the property, but this *prima facie* case is rebutted to the extent of the plaintiffs' interests acquired by the subsequently recorded deeds.

The plaintiffs' interest acquired by the subsequently recorded deeds was a 3/11 undivided interest in Lots 3, 4 and 5. Since this is the only interest that is preserved from extinguishment by G.S. § 47B-3, the defendants' title remains good as to the remaining 8/11 interest in the property.

As stated earlier herein, the defendants could not acquire this 3/11 interest from the plaintiffs by adverse possession during the life of B. F. Hobgood, Sr., and not enough time had elapsed between the date of Hobgood, Sr.'s death in 1976 and the filing of the lawsuit in 1978 for the defendants to acquire title by adverse possession. Thus, defendants have failed to establish title in themselves to the 3/11 interest in Lots 3, 4 and 5, either under the Real Property Marketable Title Act or under any of the traditional methods of proving title in this State. Accordingly, title to the 3/11 interest in Lots 3, 4 and 5 remains in the plaintiffs.

The plaintiffs argue persuasively that the defendants' marketable record title should not be able to divest the interest of a remainderman prior to the time that the remainderman is entitled to possession. However, we find it unnecessary to reach that question in this case[6] since the only interest the plaintiffs

---

6. The court below noted that no constitutional question was raised in the Superior Court or in that court as to the Real Property Marketable Title Act as ap-

have is a 3/11 undivided interest in the property and this interest is preserved from extinction under § 47B-3(10) of the Real Property Marketable Title Act by virtue of the subsequently recorded deeds in the plaintiffs' chain of title. The learned trial judge who weighed the evidence presented by the parties found that the plaintiffs had not established title to any other property. Thus, the plaintiffs' claim to the remaining 8/11 interest in Lots 3, 4 and 5 fails for lack of proof on their part rather than by any divestment on the part of the defendants under the Marketable Title Act.

This was a very complicated title lawsuit, hotly contested by competing members of the various families involved. The action was ably tried by Judge Cowper, by consent, without a jury. It is our view that he has considered carefully all of the competing claims of the parties and has correctly applied the law to the facts of the case.

The decision of the Court of Appeals is reversed and this cause is remanded to the Court of Appeals for remand to the Superior Court, Duplin County, for reinstatement of the judgment of Judge Cowper.

Reversed and remanded.

plied to this case and that the due process question was not considered by the court.