EBB CORPORATION (DARE CONCRETE, INC.) v. NANCY GLIDDEN AND NANCY GLIDDEN T/A FIRST FLIGHT CONCRETE

No. 861SC1347

(Filed 20 October 1987)

**Frauds, Statute of § 5.1— mother's promise to pay son's debt—original promise —contract not in violation of statute of frauds**

Evidence that defendant promised to pay her son's debt to plaintiff in exchange for plaintiff's keeping collection personnel away from her son was sufficient to support the trial court's finding that the parties' oral contract was

supported by adequate consideration and its conclusion that the contract was not in violation of the statute of frauds. N.C.G.S. § 22-1.

Judge BECTON dissenting.

APPEAL by defendant from *Llewellyn, Judge.* Judgment entered 3 September 1986 in Superior Court, DARE County. Heard in the Court of Appeals 2 June 1987.

*Aycock & Spence by W. Mark Spence for plaintiff appellee.*

*Trimpi, Thompson & Nash by C. Everett Thompson and John G. Trimpi for defendant appellant.*

COZORT, Judge.

This case involves an action by a corporation to enforce an oral promise made by an individual to take over her son's debt to the corporation. Ebb Corporation, plaintiff herein, is a company whose stock is totally owned by B. R. Evans, an individual. Ebb Corporation is the parent company of Dare Concrete. Jimmy Godwin is the president and manager of Dare Concrete. Nancy Glidden, defendant herein, is the mother of Bobby Gale Glidden, a debtor of Dare Concrete.

In February of 1984, Dare Concrete began supplying, on a thirty-day account, ready-mix concrete to Bobby Gale Glidden, the sole proprietor of First Flight Concrete. By May 1984, this account was $15,000 to $18,000 past due.

According to plaintiff's evidence, Dare Concrete was preparing to turn Bobby Gale Glidden's account over to its attorneys for collection when the defendant intervened and convinced the plaintiff to forbear by orally promising that she would make good any debts incurred by First Flight if plaintiff would abandon its planned course and continue to do business with her son. Plaintiff agreed, subject to the condition that the defendant or her son make some effort to begin to bring the delinquent account current. A $3,000 check, drawn on Wachovia Bank, paid for out of the defendant's personal funds, was applied to First Flight's debt on 2 November 1984. The plaintiff then resumed doing business with Bobby Gale Glidden, d/b/a First Flight, but only on a cash-on-delivery basis, with the cash discount amount being applied toward the reduction of the original debt. Soon after, however,

Bobby Gale Glidden filed a petition of bankruptcy without having paid the full amount due Dare Concrete. The defendant denied ever making an oral promise to be responsible for the account.

The case was tried without a jury. Judge James D. Llewellyn entered judgment for the plaintiffs for $18,357.89 on 3 September 1986, after finding that the oral contract was supported by adequate consideration and concluding that the oral contract was not in violation of the statute of frauds. N.C. Gen. Stat. § 22-1. Defendant appeals. We affirm.

N.C. Gen. Stat. § 22-1 provides in pertinent part:

> No action shall be brought whereby . . . to charge any defendant upon a special promise to answer the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party charged therewith or some other person thereunto by him lawfully authorized.

Defendant contends that, even if plaintiff's evidence is taken as true, the oral promise of defendant was a contract of guaranty which, to be enforceable, must be in writing, in accordance with N.C. Gen. Stat. § 22-1. Plaintiff contends that the oral contract was a separate and enforceable agreement between defendant and plaintiff.

Interpreting this portion of the statute of frauds, which is in force in many jurisdictions, has caused courts much difficulty. *See generally* 72 Am. Jur. 2d *Statute of Frauds* §§ 179-197 (1974). Chief Justice Stacy opined for our Supreme Court that the question of when a writing was required to enforce the promise of an individual to pay the debt of another was not a novel one, but was "old and vexatious" with decisions "hopelessly in conflict." *Newbern v. Fisher*, 198 N.C. 385, 386, 151 S.E. 875, 876 (1930) (citations omitted). The court continued:

> The only uniformity found among the decisions relates to a matter of terminology. The "special promise," mentioned in the statute, is regarded as meaning an express promise, and contracts held to be outside the statute, and, therefore, unaffected by it, are usually termed "original" or "independent,"

while those which fall within its provisions are spoken of as "collateral."

*Id.* Simply put, if "[t]he cause of action alleged in the complaint is based upon an original promise of defendant to pay . . . [it] does not come within the provisions of the statute, G.S. 22-1, and is not required to be in writing and signed." *Pegram-West v. Insurance Co.*, 231 N.C. 277, 282, 56 S.E. 2d 607, 611 (1949) (citation omitted). Thus, an original promise is viewed as one between the party promising indemnification and the creditor. In other words, the creditor is being told to substitute the new promisor for the original debtor and look instead to the new promisor for satisfaction of the obligation. The difficulty is in determining into which category, original or collateral, a certain promise fits. *Dozier v. Wood,* 208 N.C. 414, 416, 181 S.E. 336, 337 (1935). Once the promise is properly categorized, the question of whether a writing is required is easily answered.

As with all forms of contract, the bargaining parties' intent is key. What they meant to accomplish with their promises and exchange of consideration governs whether a promise was original and direct or, on the other hand, collateral to the first promise. A reading of the cases indicates that such determination, perhaps because of its difficulty, is generally left to the trier of fact. *Id.* "Where the intent [of the parties] is doubtful, the solution usually lies in summoning the aid of a jury." *Goldsmith v. Erwin,* 183 F. 2d 432, 435 (1950); *see* Annot., 20 A.L.R. 2d 240, 244 and 253 (1951). *See also, New Amsterdam Casualty Co. v. Waller,* 233 N.C. 536, 64 S.E. 2d 826 (1951).

In the case below, Judge Llewellyn found as fact:

6) At the end of June, 1984, Jimmy Godwin went to talk to Bobby Glidden at the place of business for Ocean Island, Inc., which business was owned or operated by the defendant, Nancy Glidden, and Nancy Glidden's husband.

7) That during the conversation with the defendant, Jimmy Godwin was assured by the defendant, Nancy Glidden, that if he would not turn the past due account over to his attorneys and not cut her son off from further deliveries of ready mixed concrete, she would insure that the account would be paid in full.

8) That Jimmy Godwin's employer, Mr. E. R. Evans, owner of Ebb Corporation, said that if Nancy Glidden would stand for the bill, credit would be extended to Bobby Glidden.

9) That at a later time near the end of the month of June, 1984, Mr. E. R. Evans, owner of Ebb Corporation, went to speak to Mrs. Glidden about the past due account and he was assured that he need not worry about the account; that she would pay the account.

10) That for some time thereafter up to September of 1984 concrete was delivered to Bobby G. Glidden based upon the defendant, Nancy Glidden's, assurance to the plaintiff that the account would be paid and satisfied in full.

11) That in September 1984, Mrs. Glidden was again approached about the past due account by Jimmy Godwin, and sometime after that a check in the amount of $3,000.00 written on a check procured [sic] by the defendant, Nancy Glidden, from her personal funds was sent to the plaintiff to apply to the account.

From the above factual findings, the trial court made the following conclusions of law:

1) That the oral promise by Nancy Glidden to pay the debt of her son, Bobby G. Glidden, with Ebb Corporation (Dare Concrete, Inc.) and the acceptance of that promise and forebearance [sic] of litigation and extension of credit worked to form a valid enforceable contract at law.

2) That said oral contract was enforceable and not in violation of the Statute of Frauds in that defendant, Nancy Glidden, had a direct, immediate and pecuniary interest in the transactions between the plaintiff and Bobby G. Glidden.

We find that the evidence here fully supports the crucial facts found by the trial court.

Godwin and Evans testified that Mrs. Glidden bargained to keep collection personnel away from her son. In exchange therefor, she promised that plaintiff would be paid. Findings of fact that are supported by competent evidence are conclusive on ap-

peal. *Transit, Inc. v. Casualty Co.*, 285 N.C. 541, 547, 206 S.E. 2d 155, 159 (1974).

"[W]here there is some new and original consideration of benefit or harm moving between the party to whom the debt to be paid is due, and the party making the promise to pay the same, such case is not within the statute [of frauds] . . . ." *Whitehurst v. Hyman*, 90 N.C. 487, 489 (1884). As Professor Farnsworth stated in his treatise on contracts:

> Like other provisions of the statute, the suretyship provision serves an evidentiary function. Indeed Williston suggested that the circumstance that "the promisor has received no benefit from the transaction . . . may make perjury more likely, because while in the case of one who has received something the circumstances themselves which are capable of proof show probable liability, in the case of a guaranty nothing but the promise is of evidentiary value."

E. Allan Farnsworth, *Contracts*, 379 (1982). Here the trial judge, sitting as trier of fact, found that adequate consideration passed between the parties when Nancy Glidden promised to take over her son's debt in exchange for the creditor's agreement not to pursue its legal remedy. Thus, the evil against which the statute is designed to protect is absent because the defendant, Nancy Glidden, received consideration.

"When . . . the promisor has a personal, immediate, and pecuniary interest in the transaction in which the third party is the original obligor, the courts will *always* give effect to the promise as an original and direct promise to pay." *Waller*, 233 N.C. at 538-39, 64 S.E. 2d at 828 (emphasis added). But, when the question is as here, a closer one, the trier of fact must decide if the obligation undertaken was original and direct and a writing required. *See* Annot., 20 A.L.R. 2d 240, 253 (1951); 13 A.L.R. 4th 1153, 1167 (1982). In this case the trier of fact has decided that the obligation was a direct one; there is competent evidence to support that finding. Therefore, the decision of the trial court is

Affirmed.

Judge MARTIN concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

Even if Ebb Corporation's evidence is taken as true, I do not believe defendant Nancy Glidden's oral promise formed a valid, enforceable contract. I, therefore, dissent.

Our Statute of Frauds, N.C. Gen. Stat. Sec. 22-1 provides:

> No action shall be brought whereby . . . to charge any defendant upon a special promise to answer the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party charged therewith or some other person thereunto by him lawfully authorized.

As an initial matter

> the mere fact that there may be a new consideration for the oral promise of a defendant to pay the subsisting debt of another is not sufficient of itself to take the promise out of the prohibition of the Statute of Frauds. "To say that any consideration will take a promise based thereon out of the statute is to make the statute useless. For if there is no consideration the promise is invalid without the statute. The statute is aimed at what were valid contracts; that is to say, it makes invalid contracts not in writing which would otherwise have been valid."

*Myers v. Allsbrook*, 229 N.C. 786, 791, 51 S.E. 2d 629, 632 (1949), *quoting Martin v. Harrington*, 174 Mo. App. 707, 710, 161 S.W. 275, 276 (1913). Only when an oral promise extinguishes the debt of the primary obligor and itself becomes an original, as opposed to a collateral undertaking, will an oral promise be enforceable. Nancy Glidden's oral promise was collateral; her son remained the primary obligor. Ebb Corporation's own witnesses testified that Nancy Glidden said she would pay her son's account and that she would stand behind her son. Further, Ebb Corporation sent the bill to Bobby Glidden, not to Nancy Glidden. Moreover, the trial court found as a fact that credit was extended to Bobby Glidden, not to Nancy Glidden.

In *Britton v. Thrailkill*, 50 N.C. 330 (1858), a father promised to pay all his son's debts if the creditors agreed not to take out

bail warrants and to allow the son to leave the state. Holding that the father's promise was not an original undertaking and that the oral promise was merely "superadded" to the original, unreleased debt, our Supreme Court barred the plaintiffs from recovering because the oral promise was within the Statute of Frauds. *Id.* at 331. Even a "continuing guaranty" is a guaranty required by the Statute of Frauds to be in writing. *Novelty Co. v. Andrews,* 188 N.C. 59, 123 S.E. 314 (1924).

More recently, in *Burlington Industries v. Foil,* our Supreme Court said:

> There must be either a present or prospective liability of a third person for which the promisor agrees to answer. If the promisor becomes himself primarily, and not collaterally, liable, the promise is not within the statute, though the benefit from the transaction accrues to a third person. If, for instance, two persons come into a store and one buys, and the other, to gain him credit, promises the seller, "If he does not pay you, I will," this is a collateral undertaking, and must be in writing; but if he says, "Let him have the goods, and I will pay," or "I will see you paid," *and credit is given to him alone, he is himself the buyer and the undertaking is original. In other words, whether the promise in such a case is within the statute depends on how the credit was given. If it was given exclusively to the promisor, his undertaking is original; but it is collateral if any credit was given to the other party.* (Emphasis in original.)

284 N.C. 740, 754, 202 S.E. 2d 591, 600-01 (1974), *quoting* Clark on Contracts at 67-68 (2nd Ed. 1904).

Finally, I find no facts or equities warranting a change in the clear and settled law that the parent-child relationship is not sufficient in and of itself to take an oral promise by a parent to pay a child's debts outside the Statute of Frauds by applying the main purpose doctrine. *See, Britton v. Thrailkill, supra,* in which an oral promise by a father to his son's creditors was held to be within the Statute of Frauds and unenforceable.

Considering the foregoing, I vote to reverse.